694 S.W.2d 252 (1985)
In the Matter of A.T.S. a/k/a T.B., Appellant,
v.
The STATE of Texas, Appellee.
No. 2-84-276-CV.
Court of Appeals of Texas, Fort Worth.
July 25, 1985.
*253 Vick, Trammell & Reese and Phillip O. Vick, Denton, for appellant.
Jerry Cobb, Crim. Dist. Atty., and Jim E. Crouch, Asst. Crim. Dist. Atty., Denton, for appellee.
Before the court en banc.

OPINION
HILL, Justice.
A.T.S., a juvenile, appeals from the order of the trial court certifying him for trial as an adult for the offense of burglary of a habitation.
A.T.S. presents three points of error, including a point in which he asserts that there was no evidence or insufficient evidence to support the trial court's findings with respect to the factors to be considered by the trial court in connection with the motion to transfer.
We reverse and remand, because we find that there is insufficient evidence to support the granting of the motion.
Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's verdict upon special issues. City of Clute v. City of Lake Jackson, 559 S.W.2d 391, 395 (Tex.Civ.App. Houston [14th Dist.] 1977, writ ref'd n.r. e.). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them, First Nat. Bank in Dallas v. Kinabrew, 589 S.W.2d 137, 146 (Tex.Civ.App.Tyler 1979, writ ref'd n.r.e.), by the same standards as are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a special issue. Okon v. Levy, 612 S.W.2d 938, 941 (Tex.Civ.App. Dallas 1981, writ ref'd n.r.e.).
In deciding a challenge to the legal sufficiency of the evidence (a "no evidence" point), we must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. See Stedman v. Georgetown Savings and Loan Ass'n, 595 S.W.2d 486, 488 (Tex.1979). If there is any evidence of probative force to support the challenged finding, then it must be upheld. Id.
Where the factual sufficiency of the evidence to support a finding is challenged (an "insufficient evidence" point), we must consider all the evidence in support of and contrary to the challenged finding to determine if the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. See In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661-62 (1951); City of Lubbock v. South Plains Electric Cooperative, Inc., 593 S.W.2d 138, 143 (Tex.Civ. App.Amarillo 1979, writ ref'd n.r.e.).
*254 In a juvenile court transfer proceeding, the burden is upon the prosecuting attorney to present evidence which will form the basis of the court's decision. B.R.D. v. State, 575 S.W.2d 126, 131 (Tex. Civ.App.Corpus Christi 1978, writ ref'd n.r.e.). The purpose of the proceeding is to determine whether it is in the best interest of the child and of society to retain jurisdiction in the juvenile court or to transfer him to district court for adult criminal proceedings. Id. To facilitate this decision, the legislature has provided criteria for the court to consider. TEX.FAM.CODE ANN. sec. 54.02(f) (Vernon 1975) sets forth the elements for consideration by the court in its decision to waive jurisdiction and transfer the case for criminal proceedings:
(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;
(2) whether the alleged offense was committed in an aggressive and premeditated manner;
(3) whether there is evidence on which a grand jury may be expected to return an indictment;
(4) the sophistication and maturity of the child;
(5) the record and previous history of the child; and
(6) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.
Id. While the court must consider all of these factors, it need not find that they have all been established. L.M. v. State, 618 S.W.2d 808, 813 (Tex.Civ.App.Houston [1st Dist.] 1981, no writ); P.G. v. State, 616 S.W.2d 635, 639 (Tex.Civ.App.San Antonio 1981, writ ref'd n.r.e.). In order to transfer the case, the trial court must conclude that the seriousness of the offense or the background of the child and welfare of the community requires criminal proceedings. J.D.P. v. State, 609 S.W.2d 868, 870 (Tex.Civ.App.Texarkana 1980, no writ); TEX.FAM.CODE ANN. sec. 54.02(a)(3) (Vernon 1975).
The trial court in this cause made findings with respect to all six of the factors to be considered. It found that:
1) the offense is an offense against property;
2) the offense was committed in an aggressive manner as indicated by the evidence of destruction of personal property and damage to the premises of the habitation in question;
3) there is sufficient evidence on which a grand jury may be expected to return an indictment;
4) A.T.S. is sufficiently mature and sophisticated to understand and appreciate his legal rights and the nature of the accusation made against him, and to communicate with his attorney in order to receive the effective assistance of counsel;
5) the prior record and history of A.T.S., specifically the history of truancy, indicates a lack of proper adjustment and discipline;
6) the prospects of adequate protection of the public and the likelihood of the rehabilitation of A.T.S. would not be substantially increased by the court's retention of juvenile jurisdiction. The procedures, services, and facilities shown to be available to the juvenile court for the time available for A.T.S. in the juvenile system would not be sufficient for the rehabilitative needs of A.T.S. due to the brief remaining period of time that such procedures, services, and facilities would be utilized.
We will discuss the evidence with respect to each factor.

NATURE OF THE OFFENSE
It is undisputed that the offense is an offense against property.

AGGRESSION AND PREMEDITATION
Officer Frank Mills, an investigator in the juvenile division of the police department for the City of The Colony, testified that the burglarized home had been ransacked. Furniture, cushions, lamps, and *255 other items in the living room had been thrown about and turned over. A watermelon had been smashed on the floor and thrown about on the carpet and sofa. He said that entry was obtained by breaking a window in order to open a door. He testified that while this burglary was similar to a professional burglary with respect to the rummaging through of drawers, it is not normal for a professional burglar to damage things in the house, though such conduct is normal in juvenile-type burglaries.
A.T.S., in his written statement, acknowledged that he and the other boys he was with had kicked in a window. He admits that he dropped the watermelon on the floor and knocked over a lamp.
The statements of those with A.T.S. indicate that A.T.S. is the one who broke in the door, that he was tearing things up or turning them over in the house, and that he was kicking the watermelon around.
There is no evidence of premeditation. Steve Johnson, a juvenile probation officer, testified that he could find nothing supporting premeditation. In his report, he stated that no weapon or tool was used to gain entrance into the residence.

GRAND JURY INDICTMENT
Officer Mills testified that in addition to the damage previously noted, jewelry, coins, and liquor were missing from the home. A.T.S. admitted in his statement that he took liquor from the home. The evidence supports the trial court's finding that a grand jury may be expected to return an indictment.

SOPHISTICATION AND MATURITY
As previously noted, Officer Mills found the crime to have greater similarity to a juvenile-type burglary than to a professional burglary.
In his psychological report, Dr. Don A. Smith, a psychologist, reported that A.T.S. has average to above average intelligence, with a verbal I.Q. of 97 and a performance I.Q. of 86. He found A.T.S. continues to be dependent on a more responsible caretaker; lacks a sense of being responsible for the consequences of his actions; lacks insight into his current difficulties; and tends to deny his problems or shift responsibility to others. One test recited in the report showed A.T.S. to be functioning at somewhat less than his chronological age in the areas of communication, daily living skills, and socialization, while performing at age level in motor skills. His social functioning was rated at being in the fifteen to sixteen year level overall. The test showed strong indications that A.T.S. remains dependent upon others for general caretaking and limit setting. The doctor noted that the interview reflected that A.T.S. had not been employed nor had he been self-directing in any significant life ventures.
Steve Johnson, a juvenile probation officer, testified that A.T.S. understands right from wrong and understands what burglary is, but that he could not say that A.T.S. knew right from wrong before the offense occurred. He acknowledged that normal sixteen year olds understand right from wrong, but he stated further that he did not know if the average sixteen year old understood that burglarizing someone else's house is a wrongful act. He stated that in some respects A.T.S. was communicating well, but that he was not at all times able to express his thoughts clearly due to difficulty with word choice. Mr. Johnson indicated that A.T.S. was not as much help to him in preparing his reports as was his mother. Although A.T.S. was able to answer some of his questions, he was having trouble answering regarding his motives. Similar information is reflected in Mr. Johnson's reports to the court.

RECORD AND PREVIOUS HISTORY
The testimony established that A.T.S. had no prior record of any juvenile offense. He did have truancy problems which had not been reported to the juvenile probation department.
ADEQUATE PROTECTION OF PUBLIC AND LIKELIHOOD OF REHABILITATION THROUGH JUVENILE PROCEEDINGS
The only testimony came from Steve Johnson, who testified that the public *256 would be adequately protected and that A.T.S. could be rehabilitated through the services of the juvenile system. He said that there were several residential treatment facilities available in the juvenile system for the rehabilitation of A.T.S. He contacted these agencies for placement, but they had not yet responded. He stated that he did not feel that the Texas Youth Commission was a suitable place to rehabilitate A.T.S.. In his report, Johnson noted that A.T.S. had never been placed on juvenile probation, nor had he ever received any counseling. He pointed out that A.T.S. could receive counseling in a structured environment at a residential facility. There was no testimony that efforts for rehabilitation within the juvenile system would be futile due to the fact that A.T.S. is approaching the age of eighteen. At the time of the hearing in October, 1984, there were sixteen months remaining until February 1, 1986, the eighteenth birthday of A.T.S.
In point of error number two, A.T.S. urges that there was no evidence or insufficient evidence to support several of the trial court's findings with respect to the factors to be considered on waiver. Based upon our review of the evidence as to all of the factors, we find that there is some evidence to support the trial court's findings as to some of the enumerated factors, but overall the finding that A.T.S. should be transferred to the criminal court for adult criminal proceedings is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. We therefore find that the evidence is insufficient to support the trial court's ruling.
We have previously noted that the trial court must conclude that the seriousness of the offense or the background of the child and welfare of the community requires criminal proceedings. In this case, the undisputed testimony established that A.T.S. committed a crime of a juvenile nature with no aggression or harm directed to the person of any individual, that A.T.S. was immature and unsophisticated and had no prior juvenile record except truancy, and that the public would be adequately protected and A.T.S. could be rehabilitated by retaining A.T.S. within the jurisdiction of the juvenile system.
The facts of Matter of E.D.N., 635 S.W.2d 798 (Tex.App.Corpus Christi 1982, no writ), a case relied upon by the State, appear to be similar to the case at bar. In that case, however, there was testimony that E.D.N. well understood his acts and their wrongfulness. There was no such testimony in the case at bar. As noted, Steve Johnson testified that A.T.S. had trouble discussing his motives. Additionally, there was testimony that E.D.N.'s expensive drug habit would require a protracted period of rehabilitation so that the thirteen months remaining would be inadequate. Again, no such testimony was presented in the case at bar. We sustain point of error number two.
In view of our ruling with respect to point of error number two, it is unnecessary to consider the remaining points of error.
The order of the trial court certifying A.T.S. for trial as an adult is reversed and the cause is remanded for further proceedings consistent with this opinion.
JORDAN, J., dissents.
JORDAN, Justice, dissenting.
I respectfully dissent.
As the majority opinion points out, under TEX.FAM.CODE ANN. sec. 54.02(f) (Vernon 1975), there are six elements the court must consider in deciding whether it should waive its jurisdiction and transfer the juvenile for adult criminal proceedings. The findings of the trial court are set out in the majority opinion and there is, in my opinion, more than sufficient evidence to support all but possibly one of the court's findings. The trial court is bound to consider all six factors set forth in sec. 54.02(f) but need not find that each is established by the evidence. A finding of several of these elements, if supported by the evidence, is sufficient. L.M. v. State, 618 *257 S.W.2d 808, 813 (Tex.Civ.App.Houston [1st Dist.] 1981, no writ); In re Q.D., 600 S.W.2d 392, 395 (Tex.Civ.App.Fort Worth 1980, no writ).
In order to transfer the case, the trial court must conclude that the seriousness of the offense or the background of the child and the welfare of the community requires criminal proceedings. J.D.P. v. State, 609 S.W.2d 868, 870 (Tex.Civ.App.Texarkana 1980, no writ); Matter of J.R.C., 551 S.W.2d 748, 753 (Tex.Civ.App.Texarkana 1977, writ ref'd n.r.e.); TEX.FAM.CODE ANN. sec. 54.02(a)(3) (Vernon 1975).
The evidence clearly supports the trial court's findings and decision to transfer the juvenile. This evidence shows, among other things, that appellant and several other youths, entered a home by kicking in and demolishing a window. They then went on a real rampage, knocking over lamps and other items, and tearing cushions out of a sofa. Appellant personally smashed a watermelon all over the floor and carpet, and then threw it on a couch. Appellant and his accomplices then departed with jewelry, coins, liquor and other small, personal items. I have not attempted to recite nearly all of the evidence in this record which, in my opinion, amply supports the action of the trial judge, but it is there.
The majority says that appellant committed a crime of a "juvenile nature with no aggression or harm directed to the person of any individual...." That opinion and appellant's brief more or less compare the offense committed here with a typical boyish, juvenile school prank. I do not see this crime in that light at all. To me, the evidence establishes a planned house burglary accompanied by violence and destruction.
While it is possible, of course, for different courts or forums to reach different results on the same set of facts, it is not for this court to substitute its judgment and opinion for that of the trial judge. That has long been the rule followed by appellate courts, as it should be. Matter of G.B.B., 572 S.W.2d 751, 756 (Tex.Civ.App. El Paso 1978, writ ref'd n.r.e.). This is what we are doing when we reverse the trial judge's decision here.
I believe that the trial judge's decision was not an abuse of discretion under the evidence in this record by any stretch of the imagination. I would affirm.
Joined by FENDER, C.J., and HOPKINS, J.