817 S.W.2d 771 (1991)
In the Matter of T.D., Appellant.
No. 01-90-00670-CV.
Court of Appeals of Texas, Houston (1st Dist.).
October 3, 1991.
Rehearing Denied November 7, 1991.
*772 William B. Connolly, Houston, for appellant.
Cedric K. Loeb, John B. Holmes, Jr., Dist. Atty., Karen McAshen and Timothy Taft, Asst. Dist. Attys., Harris County, Houston.
Before DUGGAN, MIRABAL and O'CONNOR, JJ.

OPINION
DUGGAN, Justice.
This is an appeal from an order entered under Tex.Fam.Code Ann. § 54.02(a) (Vernon *773 Supp.1991), transferring jurisdiction over appellant, T.D., from the district court, sitting as a juvenile court, to the criminal district court. Tex.Fam.Code Ann. § 56.01(c)(1)(A) (Vernon Supp.1991). We affirm.
Statement of Facts
Appellant was born on February 15, 1973. He has been referred six times to the Harris County Juvenile Probation Department: (1) on June 10, 1987 for indecent exposure; (2) on December 22, 1988 for possession of crack cocaine; (3) on January 1, 1989 for possession of crack cocaine; (4) on May 3, 1989 for robbery; (5) on May 25, 1989 for possession and delivery of crack cocaine; and (6) on January 30, 1990 for possession and delivery of crack cocaine, the current referral. For the first referral, appellant was counseled and the case was closed. The second and third referrals were consolidated, and appellant was found to have engaged in delinquent conduct and committed to the Texas Youth Commission. Appellant was re-referred to the Texas Youth Commission for the fourth and fifth referrals. He was released to his mother's custody after the fourth referral and his father's custody after the fifth referral because the Texas Youth Commission declined the referrals.
With respect to the present referral, it is alleged that appellant sold two $10 pieces of crack cocaine to undercover Houston Police Officer Chaney on January 30, 1990. The police arrested appellant the same day and placed him in the Harris County Juvenile Center on hold for the Texas Youth Commission. He had regularly scheduled detention hearings, but no adjudicatory hearing while at the Center.
On February 5, 1990, the State filed a motion requesting to waive jurisdiction of the juvenile court. On the same day, the juvenile court ordered a diagnostic study, social evaluation, and full investigation of appellant, his circumstances, and the circumstances of the alleged offense ("the report"). Tex.Fam.Code Ann. § 54.02(d) (Vernon 1986). The report was filed on March 29, 1990. The juvenile court held the hearing on the motion on April 3, 4, and 5, 1990. On April 6, 1990, the juvenile court waived jurisdiction and transferred appellant to the criminal district court.
Constitutionality of Waiver/Certification Process
In his first point of error, appellant contends the waiver/certification hearing process is unconstitutional in general, and as applied to appellant, because it is discretionary, fails to require a specific evidentiary standard relative to the State's burden of proof, and fails to require or define a specific standard of appellate review.
Section 54.02(a) of the Texas Family Code is couched in discretionary terms. See P.G. v. State, 616 S.W.2d 635, 638 (Tex.Civ.App.San Antonio 1981, writ ref'd n.r.e.); In the Matter of M.I.L., 601 S.W.2d 175, 177 (Tex.Civ.App.Corpus Christi 1980, no writ); see also In the Matter of K.D.S., 808 S.W.2d 299, 302 (Tex. App.Houston [1st Dist.] 1991, no writ). The civil trial courts are well accustomed to using their "discretion." They use it in determining whether temporary injunctions should issue, Tex.Civ.Prac. & Rem.Code Ann. § 65.011(3) (Vernon Supp.1991), in imposing discovery sanctions, Tex.R.Civ.P. 215(2), and in allowing pleading amendments, Tex.R.Civ.P. 66. The fact that a court may undertake an act, but is not required to do so, does not mean that a court is free to do as it pleases. The court must act with reference to guiding rules and principles, reasonably, not arbitrarily, and in accordance with the law. See, e.g., Lamar Builders, Inc. v. Guardian Sav. & Loan Ass'n, 789 S.W.2d 373, 374 (Tex. App.Houston [1st Dist.] 1990, no writ).
Section 56.01 of the Family Code, the section that authorizes the appeal in this instance, provides that the requirements governing an appeal from juvenile certification proceedings are the same as those in civil cases generally. Tex.Fam. Code Ann. § 56.01(b) (Vernon 1986). The standards for evaluating the evidence to support findings are well established, factual and legal sufficiency standards. See Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982); In re King's Estate, 150 Tex. 662, *774 664-65, 244 S.W.2d 660, 661 (1951); IFG Leasing Co. v. Ellis, 748 S.W.2d 564, 566 (Tex.App.Houston [1st Dist.] 1988, no writ); Ritchey v. Crawford, 734 S.W.2d 85, 86 (Tex.App.Houston [1st Dist.] 1987, no writ). If an appellate court finds the evidence factually or legally insufficient to support the juvenile court's order transferring jurisdiction of a youth to the criminal district court, it will necessarily find that the juvenile court has abused its discretion.
We overrule appellant's first point of error.
Constitutionality of Harris County Policy
In his second point of error, appellant asserts that the waiver/certification process and policy of the Harris County District Attorney to file a certification request for the juvenile court to waive jurisdiction over appellant was unconstitutional and violated appellant's right to treatment, training, and rehabilitation.
We first address appellant's argument that the Harris County District Attorney has a procedure or policy to seek a waiver of jurisdiction solely on the basis of a subsequent referral. The evidence for such a procedure or policy comes from the following exchange between defense counsel and Ms. Willis, appellant's Harris County juvenile probation officer:
Q: There is some reference to a policy at the time in terms of [appellant] coming into arrest and detention while he was in the custody of T.Y.C. Is there some sort of new policy?
A: There is a new policy that came into effect I think somewhere around September, 1989, that stated that we will file on all children that have been previously committed to the Texas Youth Commission who come in with drug offenses.
Q: So, there is a specific policy within

A: Yes.
Q: the Harris County Juvenile Probation or is it the District Attorney's office?

A: I cannot best answer that for you.

Q: As far as you know, there is a policy that singles out drug cases for certification while children are in custody?
A: I did not say for certification, for re-filing.

Q: For re-filing. Okay.
(Emphasis added.)
Contrary to appellant's assertion in his brief, there is no evidence in the record that the Harris County District Attorney's office has a policy to seek a waiver of juvenile court jurisdiction, that is, certification of a juvenile as an adult, solely on the basis of a subsequent referral. For this Court to consider a constitutional issue, the issue must be properly raised and necessary to a decision in a case. See Wood v. Wood, 159 Tex. 350, 358-59, 320 S.W.2d 807, 813 (1959) (the question of constitutionality of the statute not having been properly raised or briefed, it is thus immaterial to a decision of the case); Courtney v. State, 639 S.W.2d 16, 17 (Tex.App. Houston [1st Dist.] 1982, pet. refd) (constitutionality of a statute will be considered only when a question is properly raised and a decision is necessary to a disposition of a case). An issue is not properly raised where, as here, the existence of a state of facts, which may be unconstitutional, is assumed and not proved.
Appellant asks us to hold that "Meaningful and realistic treatment, training and rehabilitation must be a condition precedent to a waiver of jurisdiction." We are asked to reverse and remand the juvenile court's order waiving jurisdiction in connection with appellant's January 30, 1990 referral because appellant did not receive appropriate treatment following his commitment to the Texas Youth Commission after his January 1, 1989 referral.
The statutes dealing with delinquent children have several public purposes. Tex. Fam.Code Ann. § 51.01 (Vernon 1986). Two of them are:
(2) to protect the welfare of the community and to control the commission of unlawful acts by children;
(3) consistent with the protection of the public interest, to remove from children committing unlawful acts the taint of *775 criminality and the consequences of criminal behavior and to substitute a program of treatment, training, and rehabilitation
....
Tex.Fam.Code Ann. § 51.01(2), (3) (Vernon 1986) (emphasis added).
Treatment, training, and rehabilitation are not the sole public purposes behind the procedures for handling delinquent children. These purposes also need to be balanced against the welfare of the community and the protection of the public interest. If the legislature intended that children should never be treated as adults when they violate the law, then the certification provisions of Tex.Fam.Code Ann. § 54.02(a) (Vernon Supp.1991) would not have been included in the law. Moreover, Tex.Fam. Code Ann. § 54.02(f) (Vernon 1986) directs the juvenile court, in deciding whether to waive jurisdiction over a child, to consider whether the child can be rehabilitated through the use of juvenile services and facilities currently available to the juvenile court. Section 54.02(f) does not direct the juvenile court to evaluate the quality of the treatment services offered the child in determining whether to waive its jurisdiction. As an intermediate court, in the absence of a statutory or higher court directive, we decline to mandate such a consideration. See Public Util. Comm'n v. Cofer, 754 S.W.2d 121, 124 (Tex.1988); Lumpkin v. H & C Communications, Inc., 755 S.W.2d 538, 540 (Tex.AppHouston [1st Dist.] 1988, writ denied).
We overrule appellant's second point of error.
Specificity of Reasons
In his third point of error, appellant urges that the juvenile court erred in waiving its jurisdiction over him because the court failed to specify its reasons, certify its findings, or specifically state which constitutional and statutory rights were waived by appellant, all in violation of express statutory requirements.
Section 54.02 of the Texas Family Code provides in relevant part:
If the juvenile court waives jurisdiction, it shall state specifically in the order its reasons for waiver and certify its action, including the written order and findings of the court, and shall transfer the child to the appropriate court for criminal proceedings.
Tex.Fam.Code Ann. § 54.02(h) (Vernon Supp.1991) (emphasis added). The statute directs the juvenile court in arriving at its decision to waive jurisdiction to consider, "among other matters," whether the alleged offense was against people or property and committed in an aggressive and premeditated manner, whether there is evidence on which a grand jury might return an indictment, the sophistication, maturity, record, and previous history of the child, adequate protection of the public, and the likelihood of the child's rehabilitation through juvenile services. Tex.Fam.Code Ann. § 54.02(f) (Vernon 1986).
The order of the juvenile court waiving jurisdiction dated April 6, 1990, provides as follows:
[T]he Court finds that the said [appellant] is charged in the violation of a penal law of the grade of felony, if committed by an adult, to wit: THREE PARGRAPHS OF DELIVERY OF COTROLLED SUBSTANCE NAMELY CCAINE on or about the 30th day of January, 1990; that there has been no adjudication of these offenses; that he was 16 years of age at the time of the commission of the alleged offense, having been born on the 15th day of FEBRUARY, 1973, that there is probable cause to believe that the child committed the offense alleged and that because of the seriousness of the offense the welfare of the community requires criminal proceedings. In making that determination, the Court has considered, among other matters:
1. Whether the alleged offense was against the person or property, with the greater weight in favor of waiver given to offenses against the person;
2. Whether the offense was committed in an aggressive and premeditated manner;
3. Whether there is enough evidence upon which the grand jury may be expected to return an indictment;

*776 4. ine sopnistication ana maturity 01 the child;
5. The record and previous history of the child; and
6. The prospects of adequate protection of the public and likelihood of reasonable rehabilitation of the child by use of procedures, services and facilities currently available to the Juvenile Court.
The Court finds that the penal law alleged to have been violated by the Respondent, was of the grade of felony. The Court further finds that the Respondent is now 17 years of age and was at the time of the alleged offense 15 years of age or over having been born on the 15th day of February, 1973. The Court further finds that there was no adjudication hearing concerning the offense. The Court has considered the offense and finds that it was committed in an aggressive and premeditated manner, and that there is sufficient evidence upon which a grand jury might be expected to return an indictment, and that the Court has considered the sophistication and maturity of the Respondent and his previous history.
....
The Court finds that it has considered the rehabilitative processes available to this Court and the facilities currently available to this Court, and having considered these among other matters, the Court finds that there is little if any, likelihood that the facilities and services available to this Court could reasonably be expected to rehabilitate the Respondent and that there is from the nature of the offense the likelihood that the public is not adequately protected from future such conduct, and for those reasons and other reasons, the jurisdiction of this Court is waived.
The juvenile court arrived at its findings after three days of testimony, filling five volumes of the statement of facts, from appellant's juvenile probation officer, the six Houston police officers who were involved in arresting and processing appellant for the alleged offenses in January 1989, May 1989, and January 1990, appellant's case manager from the Texas Youth commission, me psycnoiogist wno evaluated appellant, the drug rehabilitation counselor who evaluated appellant, the psychiatrist who evaluated appellant, and appellant's mother. The documentary evidence introduced included the certification investigation report, the psychiatric and psychological evaluations, records from the Texas Youth Commission, and appellant's probation file.
Appellant cites Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); In re J.R.C., 522 S.W.2d 579 (Tex. Civ.App.Texarkana 1975, writ refd n.r.e.); R.E.M. v. State, 541 S.W.2d 841 (Tex.Civ.App.San Antonio 1976, writ refd n.r.e.); and In the Matter of N.S.D., 555 S.W.2d 807 (Tex.Civ.App.El Paso 1977, no writ) to support his contention that the juvenile court's findings are not specific enough.
In Kent, the court made no findings and recited no reasons. 383 U.S. at 546, 86 S.Ct. at 1049. The waiver of jurisdiction merely stated, "after full investigation, I do hereby waive jurisdiction of petitioner." Id. In J.R.C., with a statute substantially similar to the one before us today, the court's order stated, "after diagnostic study, social evaluation and full investigation, [the Court] is of the opinion that it is contrary to the best interest of said child and to the public to retain jurisdiction." 522 S.W.2d at 580. In R.E.M., the order waiving jurisdiction appears to have stated reasons substantially similar to those in the order before us. 541 S.W.2d at 846. The court did not object to the specificity of the reasons, but to the fact that there was no evidence to support the reasons. Id. In N.S.D., the order recited three reasons for waiving jurisdiction, which were not nearly as extensive as those before us today: "(a) The juvenile is in need of rehabilitation.... (b) There are no services ... to effectuate the juvenile's rehabilitation, (c) The general public ... needs to be protected." 555 S.W.2d at 809. The court condemned reasons (a) and (c) as too general and found no evidence to support (b). Id.
We find that these cases provide no support for appellant's contention that the juvenile *777 court's reasons were not specific enough. Moreover, other courts have approved specific findings similar to those before us. See In re LB., 619 S.W.2d 584, 587-88 (Tex.Civ.App.Amarillo 1981, no writ); P.G., 616 S.W.2d at 638-39; see also In re C.L.Y., 570 S.W.2d 238, 241 (Tex.Civ. App.Houston [1st Dist.] 1978, no writ). Therefore, we find the juvenile court's reasons to be specific as required by the statute.
Appellant also complains that the court's order waiving jurisdiction was not certified to the district court. The copy of the juvenile court order that appears in the transcript does not contain a certificate, but it is signed. The order of the criminal district court receiving the case, which also appears in the transcript, reads: "[I]t appearing to this court that the 314TH JUDCIAL DISTRICT COURT, sitting as a Juvenile Court of Harris County, Texas, has certified to this court that it has waived jurisdiction ... and it appearing to the court from said court's certification including the written order and finding of the court____" (Emphasis added.) Therefore, we find the juvenile court did certify its findings to the criminal district court. See In the Matter of B.V., 645 S.W.2d 334, 336 (Tex.App.Corpus Christi 1982, no writ) (the signing of the order by the judge in his capacity of presiding judge of the juvenile court is sufficient to comply with the certification requirement of § 54.02(h)).
The juvenile court order also provides that appellant "is of sufficient sophistication and maturity to have intelligently, knowingly and voluntarily waived all constitutional and statutory rights heretofore waived by the said Respondent...." Appellant asserts that such a finding lacks specificity, and complains that he did not waive any constitutional or statutory rights. The order does not state that appellant waived any constitutional or statutory rights, merely that if he did so, such waiver was intelligent, knowing, and voluntary. Therefore, any error is harmless. Tex.R.App.P. 81(b)(1).
We overrule appellant's third point of error.
Sufficiency of Evidence
Appellant, in his fourth point of error, argues that there was no evidence or, alternatively, insufficient evidence to support the juvenile court's findings. More specifically, appellant asserts that there is no probative evidence that the welfare of the community required a waiver of jurisdiction of the juvenile court and criminal proceedings against appellant. Appellant identifies the procedures, resources, and services available to the juvenile court as being of primary importance in establishing the welfare of the community.
Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's verdict upon special issues. A.T.S. v. State, 694 S.W.2d 252, 253 (Tex. App.Fort Worth 1985, writ dism'd w.o.j.). The court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards applied in reviewing the legal or factual sufficiency of the evidence supporting the jury's answers to special issues. Id. In deciding a challenge to the legal sufficiency of the evidence, we must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. Id.; I.B., 619 S.W.2d at 587; N.S.D., 555 S.W.2d at 809.
Dr. Cavazos, who did the psychiatric evaluation of appellant, testified that she still thought appellant could benefit by consistent education, a structured environment, and vocational training, provided he was motivated and dedicated. Ms. Olson, who was appellant's case manager at the Texas Youth Commission, testified that, after appellant was released from the Brownwood state school, he chose not to participate in the services provided him through the Texas Key Program, which included educational, psychological, and drug treatment plans. She stated that appellant was angry at being placed in the Texas Key Program because he felt he was being "baby sat," and because he felt he had completed his time at the state school. She stated appellant wished to return to Brownwood because he believed he would be *778 freed faster from control by the Texas Youth Commission. Dr. Scherzer, who performed the psychologic examination of appellant, testified that rehabilitation services would be helpful for someone who was motivated and willing to participate. He also characterized appellant as someone who denied any current psychological or emotional problems and who did not remember having past depression anxieties. He stated that appellant knew the difference between right and wrong and between acceptable and unacceptable behavior, and that appellant should be considered culpable and responsible for his behavior. Mr. Chevalier, an alcohol and drug abuse counselor who administered a "SASSI" test to appellant, testified if a person was willing to go into treatment and was also willing to follow instructions, he or she would benefit from treatment. In response to a hypothetical by appellant's attorney, which reflected appellant's circumstances, Mr. Chevalier stated such a person would have no chance at recovery and rehabilitation.
Ms. Willis, appellant's Harris County juvenile probation officer, testified that appellant was streetwise, mature, and sophisticated, and did what he determined he wanted to do. She stated that appellant's mother lacked the ability to control his behavior, that Harris County did not offer programs for someone as sophisticated as appellant, and that the only place capable of doing anything for him was the Texas Youth Commission. She admitted, however, that the Texas Youth Commission had been handling him for a year and that he had picked up subsequent offenses. She agreed that the concept behind the juvenile system is to rehabilitate those children who can be rehabilitated. She conceded appellant did not come across as a child, but as a streetwise person who was not dependent on his parent or the system to survive. She gave as her opinion that appellant needed a "full time lockup" because he was not capable of conforming his behavior to the rules of society without being held against his will in a lockup facility.
Officer Chaney, who participated in the events leading up to appellant's arrests for cocaine possession and delivery in May 1989 and January 1990, testified that the attitude of appellant was that the police should hurry up and complete their paperwork so he could return to his business on the street. Police Officer Drozd, who arrested appellant in January 1990, testified that appellant acted more like an adult than a juvenile. He characterized appellant as cool, calm, and sure of himself; he stated appellant did not appear to be under the influence of drugs or alcohol. He stated that appellant said he would be out dealing his stuff before the police finished the paperwork on him.
Having reviewed the testimony and records pertaining to the unavailability of rehabilitative services suitable for appellant and the unwillingness of appellant to be rehabilitated, we conclude there is probative evidence supporting the juvenile court's finding that there is little likelihood the facilities and services available to the juvenile court could reasonably be expected to rehabilitate appellant.
In reviewing appellant's factual sufficiency contention, we consider all the evidence. P.G., 616 S.W.2d at 639. The finding will be upheld if it is not so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. A.T.S., 694 S.W.2d at 253; I.B., 619 S.W.2d at 587. However, we do not substitute our judgment for that of the juvenile court. C.L. Y, 570 S.W.2d at 240.
In January 1989, Dr. Cavazos diagnosed appellant as having a probable chemical dependence. Appellant's mother testified that he had expressed willingness to go into an alcohol and drug rehabilitation treatment program. She stated that in her experience her son was very cooperative. She also stated that he needed treatment for his addiction and because of his low I.Q. Dr. Scherzer found appellant cooperative and polite and that he gave his best effort on the test administered. He stated that people under the influence of drugs and alcohol, even though they know the difference between right and wrong, act in an unacceptable manner. Officer Chaney testified that if someone has an identified substance abuse problem, he or she ought *779 to be treated for it and that such treatment was in the best interest of society. Ms. Willis testified that appellant had become very cooperative with her. She stated nothing in appellant's records reflected any violent acts against third parties. She testified, in her opinion, that appellant could still benefit from long-term care in a structured facility that provided the special education and vocational training he needed. She stated that the Texas Youth Commission had a state hospital that could meet appellant's needs. She also agreed that, although appellant had been in the custody of the Texas Youth Commission for a year, he had really not received any structure or care for the last six months. She also stated that Harris County Juvenile Probation could provide a structured environment for one year, individual drug counseling, and daily school attendance. Ms. Olson testified that appellant's needs assessment done by the Texas Youth Commission in 1989 dictated that he be placed in a structured medium risk facility; however, he was placed in a low risk facility. She acknowledged that the Texas Youth Commission was required to establish an educational plan for a child; however, it had not done so with respect to appellant.
Having reviewed all the evidence regarding appellant's willingness to rehabilitate and the availability of juvenile services to rehabilitate him, as well as the previously described evidence to the contrary, we conclude there was conflicting testimony. The juvenile court, as the trier of fact, was entitled to weigh the evidence and the credibility of the witnesses. We find the evidence factually sufficient to uphold the juvenile court's conclusion there is little likelihood the facilities and services available to the juvenile court could reasonably be expected to rehabilitate appellant.
Furthermore, we note that appellant has challenged the sufficiency of only one of the juvenile court's findings. The availability of services to rehabilitate a juvenile is only one of the issues to be considered by the court in determining if juvenile court jurisdiction should be waived. See P.G., 616 S.W.2d at 639; C.L.Y., 570 S.W.2d at 240-41.
We overrule appellant's fourth point of error.
The judgment is affirmed.
O'CONNOR, J., dissenting.
O'CONNOR, Justice, dissenting.
I dissent.
T.D. is a black male who is functionally illiterate, with poor social and language skills, and has an intelligence quotient of 73, which is considered the lower end of the borderline range of intelligence. T.D. was described by a psychologist as emotionally isolated and likely to react to situations and events in a childish, immature, impulsive, and restless manner. T.D. is from a family of 11 children, and lives with his mother in a drug-infested part of Houston; his father is an alcoholic. When T.D. was 15 years of age, he was diagnosed as a substance abuser, both of alcohol and crack cocaine.
In December of 1988 and January of 1989, when T.D. was 15 years old, he was referred to the Harris County Juvenile Probation Department for possession of crack cocaine. As a result of the two referrals, the juvenile court found T.D. had engaged in delinquent conduct and committed him to the Texas Youth Commission (TYC).[1] In the order referring T.D. to TYC, the court said T.D. needed a highly structured environment with constant supervision and control. The recommendation of Ms. Willis, his probation officer, was that T.D. be given some sort of substance abuse counseling and, because of his borderline intelligence, some specialized academic and vocational training. The court order committed T.D. to the Brownwood State School for an indeterminate period of time not to exceed T.D.'s twenty-first birthday. Two months after his commitment, Brownwood released T.D., returned him to the custody of his mother, and assigned him to the Texas Key *780 Day Treatment program, a contract facility for nonresidential treatment.
When T.D. was told he was going to be discharged from Brownwood, he objected to being sent home and asked to go back to the state school. Ms. Olson, his case manager at TYC, testified that she told T.D. that he would have to do something wrong, that is, get into more trouble, before he could go back to the state school. He did.
While at TYC, T.D. was medicated with Thorazine, a major neuroleptics, anti-psychotic drug, given to people with schizophrenia or schizophrenic-formed disorder, a heavy sedative used to calm psychotic patients. At the certification hearing, an expert testified there was no indication T.D. was psychotic. Although institutions sometimes use Thorazine to control their patients, TYC is prohibited by regulation from using psychotropic drugs as a means of management control.[2] Thus, TYC, in prescribing the drug for T.D., violated its own regulations regarding the medication of children. When TYC discharged T.D., it gave him a month's supply of Thorazine, 25 milligrams, and told him to medicate himself daily. Recall: T.D. is a diagnosed substance abuser. By regulation, TYC is required to have the prescribing physician periodically review drug prescriptions.[3] TYC did not review T.D.'s use of the drug Thorazine. Thus, TYC again violated its own regulations regarding the medication of children.
After being discharged from Brownwood, TYC enrolled T.D. in the Texas Key day-care program, which required parental supervision. All the records indicate that TYC knew that T.D. had no parental supervision. T.D.'s mother works as a medical clerk full time as the sole support of her children. One of the complaints lodged by TYC against T.D. was that, after he returned home, he dropped out of the Texas Key program. One doctor's report stated, "Since quitting school, T.D. has generally slept late (into the afternoon) at home, gotten up and gone over to the park where he hangs out with friends." T.D.'s mother testified TYC did not tell her it sent T.D. home with Thorazine (another violation of TYC's regulations).[4] When she found the Thorazine, she threw it out. Until then, she said, T.D. slept most of the day.
When T.D. was released from Brownwood, TYC gave him a curfew. A few months later, T.D. was shot in the leg as a bystander at the scene of a robbery. Inexplicably, as a direct result of that incident, TYC responded by extending T.D.'s curfew to a later hour.
In October 1987, T.D. was re-enrolled in the ninth grade at Kashmere High School, even though he could barely read and write. Another of the complaints lodged against T.D. was that he stopped going to school. It was predictable that he would stop attending school. His records showed that, with his low IQ, he needed special education and vocational training, neither of which was offered to him at Kashmere.
In January of 1990, T.D. was arrested for possession and delivery of two $10 pieces of crack cocaine to undercover Houston Police Officer Chaney, the referral made the basis of the certification hearing. T.D. was placed in the Harris County Juvenile Center on hold for TYC. At the Juvenile Center, he had regularly scheduled detention hearings, but no adjudicatory hearing.
On February 5, 1990, the State filed a motion for the juvenile court to waive jurisdiction. In response, the juvenile court ordered a diagnostic study, social evaluation, and full investigation of T.D., his circumstances, and the circumstances of the offense (the report). On April 6, 1990, after a three-day hearing, the court waived jurisdiction and transferred T.D. to the criminal district court.
*781 At the certification hearing, Ms. Willis testified that T.D. could benefit from longterm care in a structured facility that provides the special services he needs, that is special education and vocational training. She recommended that T.D. be sent to a long term substance abuse program for at least a year. She testified that based on her experience with T.D., it was not in his best interest to give him Thorazine to medicate himself. She testified that the TYC facilities could serve T.D.'s needs; that T.D. needs to be in a long range, lock-up facility that will meet his need for drug and alcohol addiction treatment, and provide vocational training and education.
Joseph Chevalier, the clinical director for the Chrysalis Center, a speciality hospital that deals with substance abuse whose staff is made up of minority doctors, testified for T.D. He said T.D., as all addicts, denied his addiction, and was not able to self-medicate with the Thorazine. He said that if T.D. were willing to go into treatment and would follow instructions, he would benefit if enrolled in a treatment program.
1. Error in the referral
In point of error three, T.D. urges that the juvenile court erred in waiving its jurisdiction over him because the court did not specify its reasons, certify its findings, or specifically state which constitutional and statutory rights he waived both in violation of express statutory requirements. I begin this analysis by reminding the reader that the determination to transfer a child from the statutory structure of the juvenile court to the criminal processes of the district court is a "critically important" proceeding. Kent v. United States, 383 U.S. 541, 556, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84 (1966).
a. Specific findings
Section 54.02 of the Texas Family Code directs the juvenile court judge to state specifically in the order its reasons for waiver. TEX.FAM.CODE ANN. § 54.02(h) (Vernon Supp.1991) (emphasis added). The statute directs the juvenile court to consider "among other matters," whether the alleged offense was against people or property, whether it was committed in an aggressive and premeditated manner, whether there is evidence on which a grand jury might return an indictment, the sophistication, maturity, record, and previous history of the child, adequate protection of the public, and the likelihood of the child's rehabilitation through juvenile services. Tex. Fam.Code Ann. § 54.02(f) (Vernon 1986).
T.D. complains that the order is merely a restatement of the statute, and does not include any specific reasons for the referral. T.D. cites Kent to support his argument that the juvenile court's findings are not specific enough. In Kent, the juvenile court made no findings and recited no reasons for the referral. 383 U.S. at 546, 86 S.Ct. at 1049. The court's waiver of jurisdiction merely stated, "after full investigation, I do hereby waive jurisdiction of petition." 383 U.S. at 546, 86 S.Ct. at 1049. The Supreme Court held the order waiving jurisdiction was invalid. 383 U.S. at 552, 86 S.Ct. at 1053. The Court said that the procedure used in Kent was faulty because, among other things, the court did not state its reasons for the referral. 383 U.S. at 554, 86 S.Ct. at 1053-54.
The Kent opinion teaches that the trial court's order must set forth the reasons for the order with sufficient specificity to permit meaningful review. Kent, 383 U.S. at 561, 86 S.Ct. at 1057. The appellate court must have before it a statement from the trial court of the reasons that motivated the waiver. Kent, 383 U.S. at 561, 86 S.Ct. at 1057. We should not "assume" the trial court had adequate reasons for the waiver. Kent, 383 U.S. at 561, 86 S.Ct. at 1057.
A comparison of the provisions in § 54.-02(a) and (f) that require the court to consider certain, specified matters, with the language from the trial court's order follows:

Required findings Findings of the court
Juvenile alleged to commit a felony. § 54-02(a)(1). The Court finds that the [juvenile] is
 charged in the violation of a penal law of

*782
 the grade of felony, if committed by an
 adult, to wit: THREE PARAGRAPHS OF
 DELIVERY OF CONTROLLED SUSTANCE
 NAMELY COCAINE on or about
 the 30th day of January, 1990 .... The
 Court finds that the penal law alleged to
 have been violated by the [juvenile], was of
 the grade of felony.
Juvenile was 15 or oveer at time of offense. [The juvenile] was 16 years of age at the
§' 54.02(a)(2). time of the commission of the alleged offense,
 having been born on the 15th day of
 FEBRUARY, 1973 .... The Court further
 finds that the [juvenile] is now 17
 years of age and was at the time of the
 alleged offense 15 years of age or over
 having been born on the 15th day of February,
 1973.
No adjudication hearing was conducted. [T]here has been no adjudication of these
§ 54.02(a)(2). offenses .... The Court further finds
 that there was no adjudication hearing concerning
 the offense.
Probable cause to believe juvenile committed [T]here is probable cause to believe that
offense. § 54.02(a)(3). the child committed the offense alleged.
Because of the seriousness of the offense [B]ecause of the seriousness of the offense,
or the background of the child, the welfare the welfare of the community requires
of the community requires criminal proceedings. criminal proceedings.
§ 54.02(a)(3).
Whether the alleged offense was against No finding.
the person or property, with the greater
weight in favor of waiver given to offenses
against the person. § 54.02(f)(1).
Whether the offense was committed in an The Court has considered the offense and
aggressive and premeditated manner. finds that it was committed in an aggressive
§ 54.02(f)(2). and premeditated manner ....
Whether a grand jury may be expected to [T]here is sufficient evidence upon which a
return an indictment. § 54.02(f)(3). grand jury might be expected to return an
 indictment ....
The sophistication and maturity of the The Court specifically finds that [the juvenile]
child. § 54.02(f)(4). is of sufficient sophistication and maturity
 to have intelligently, knowingly and
 voluntarily waived all constitutional and
 statutory rights heretofore waived ... and
 is of sufficient sophistication and maturity
 to intelligently and knowingly understand
 . . . the proceedings ....
The record and previous history of the [T]he Court has considered . . . the previous
child. § 54.02(f)(5). history of the [juvenile] . . ..not a
 finding.
Likelihood of rehabilitation by use of services [T]he Court finds that there is little if any,
currently available. § 54.02(f)(6). likelihood that the facilities and services
 available to this Court could reasonably be
 expected to rehabilitate the [juvenile] ....
Prospects of adequate protection of the [F]rom the nature of the offense the likelihood
public. § 54.02(f)(6). that the public is not adequately protected
 from future such conduct ....
 [F]or those reasons and other reasons, the
 jurisdiction of this Court is waived ....

*783 If we reject the assumption that the trial court is only required to adopt the language in the statute for its findings and it must make actual findings that relate to this juvenile, the court's order makes few findings that relate to this juvenileonly the findings of T.D.'s age and the time of the offense are specific as to him. Worse, the order implies that there are other reasons, not stated in the order, on which the court relies. In Kent, the United States Supreme Court said the juvenile court may not "receive and rely on secret information." Kent, 383 U.S. at 563, 86 S.Ct. at 1058. I would hold that reproducing the language of the statute in the order does not comply with the requirements in the statute itself, Tex.Fam.Code Ann. § 54.02, or with Kent. Appellate courts need factual findings, not legal reasons. It is not necessary for the order to reproduce the language of the statute; it is necessary for the order to state the factual reasons for waiving jurisdiction. See In the Matter of J.R.C., 522 S.W.2d 579, 583-84 (Tex.Civ. App.Texarkana 1975, writ refd n.r.e.) ("The fact that the Legislature changed `briefly state' to `state specifically' indicates that it contemplated more than merely an adherence to printed forms").
For example, the trial court found that T.D. committed the offense in an aggressive and premeditated manner. It would be helpful for us to know what behavior of T.D. the court considered aggressive. T.D. was charged with the offense of selling crack, not assault or murder. When the undercover police officer approached T.D. to buy crack, T.D. responded with three questions: "You okay? You cool? You the law?" Did the trial court consider that as aggressive behavior? If the trial court had stated that T.D.'s sales approach was aggressive, this Court might have something to review. What the court more likely considered as aggressive was the police officers' characterization of T.D. during the booking procedure as impatient, cocky, and "mouthy." Again, if the trial court had stated its findings, we might be in the position to evaluate its reasons for finding the crime was committed in an aggressive manner.
Another example of the problem the lack of findings creates, is that we do not know how the trial court evaluated the evidence that T.D. was referred on six different matters, three of which were declined. Did the court consider the three that were declined?
I recognize that the court in In re I.B., 619 S.W.2d 584, 587 (Tex.App.Amarillo 1981, no writ), held that an order that "parrots" the considerations in the statute complies with the requirement to state specific reasons, so long as the reasons have some support in the evidence. I disagree. The United States Supreme Court said the court may not "assume" the juvenile court had adequate reasons for the waiver of jurisdiction. Kent, 383 U.S. at 561, 86 S.Ct. at 1057. To reproduce the statutory requirements as the findings, makes a mockery of the entire proceeding. b. Waiver of constitutional rights
The juvenile court order states that T.D. "is of sufficient sophistication and maturity to have intelligently, knowingly and voluntarily waived all constitutional and statutory rights heretofore waived by the said Respondent...."
T.D. asserts that such a finding lacks specificity, and complains that he did not waive any constitutional or statutory rights. The State responds that the fact that no rights may have been waived does not render false the finding that rights which were waived were done so intelligently, knowingly, and voluntarily. I disagree. The order states that T.D. waived unspecified constitutional and statutory rights. If this case is certified to district court and if T.D. asserts constitutional or statutory rights, the State could argue that the trial court found T.D. waived those rights.
*784 In R.EM. v. State, 541 S.W.2d 841 (Tex. Civ.App.San Antonio 1976, writ ref'd n.r.e.), the order waiving jurisdiction also found that the defendant was of "sufficient sophistication and maturity to have intelligently, knowingly, and voluntarily waived all constitutional and statutory rights heretofore waived." 541 S.W.2d at 846. The San Antonio Court of Appeals was troubled by the finding, and held the requirement that the court consider the maturity and sophistication of the child referred to the question of culpability, not to waiver of rights. In R.E.M., the court reversed, in part because the juvenile officer testified that the child probably did not understand the seriousness of his conduct. 541 S.W.2d at 846, 847.
I would sustain T.D.'s point of error three with respect to the lack of specificity in the court's reasons for waiving jurisdiction and in stating which constitutional and statutory rights he waived.
2. Sufficiency of the evidence
In point of error four, T.D. argues that there was no evidence or, alternatively, insufficient evidence to support the juvenile court's findings. I would decline to review the challenges to the evidence until the trial court makes appropriate findings.
I would remand the cause to the trial court to make specific factual findings to support the certification order and to determine which, if any, statutory and constitutional rights were waived by T.D. See, e.g., Kent, 383 U.S. at 556, 86 S.Ct. at 1057.
NOTES
[1] There were three other referrals, but they were declined and T.D. was released to the custody of his parents.
[2] Tex. Youth Comm'n, 37 Tex.Admin Code § 87.-103(a)(5) (West Supp. Dec. 20, 1990).
[3] Tex. Youth Comm'n, 37 Tex.Admin.Code § 87.-103(a)(6) (West Supp. Dec. 20, 1990).
[4] Under Tex. Youth Comm'n, 37 Tex.Admin Code § 87.91(a), (f) (West Supp. Dec. 20, 1990), parents must be contacted for medical consent for TYC to administer drugs. Unless contrary notice is given by the parents, TYC has authority to administer drugs. Contact with the parents is documented by the postal receipt for certified mail, kept in the youth's medical file.