# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00112-CV

## In the Matter of J. A. P.

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. J-21,371, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

The State filed a petition alleging that appellant J.A.P. had engaged in delinquent conduct by committing aggravated assault against a friend and fellow classmate during a break between their eighth grade summer school classes. *See* Tex. Pen. Code Ann. ' 22.02 (West Supp. 2002). The juvenile court found beyond a reasonable doubt that the State=s allegations were true. J.A.P. was adjudicated to have engaged in delinquent conduct by knowingly, intentionally, and recklessly causing serious bodily injury to the complainant by choking him. After a disposition hearing, the court placed J.A.P. on probation in his mother=s care for six months. J.A.P. appeals, contending the evidence is insufficient to support the trial court=s ruling. We will affirm the judgment.

In June 2001, J.A.P. was attending summer school classes at Crockett High School. During a break, a group of friends, including J.A.P. and the complainant, gathered in the courtyard to talk and Amess around.@ The complainant testified that J.A.P. approached him and said: ALet me show you a trick.@ Before the complainant responded, J.A.P. grabbed him around the neck and proceeded to choke him for about seven seconds, whereupon the complainant lost consciousness and collapsed onto the concrete surface of the courtyard. The complainant testified that he had not consented to the choking, and that in fact he would never consent to being grabbed by the neck because he had always been sensitive about his neck. The complainant also testified that while he did not lift his hands to grab J.A.P.=s arms, he struggled by moving side to side and by trying to put his head down. When the complainant recovered and stood up, his face was bloody from lacerations. J.A.P. and two other friends accompanied the complainant to the restroom to help him clean up. There, the complainant discovered that he had chipped four teeth.

On his way back to class, the complainant encountered his teacher, Beverly May, who had been notified of the incident by a student. She escorted him to the office of the assistant principal, where the complainant telephoned his mother and notified her of what he referred to at the time as an Aaccident.@ Neither the teacher nor the assistant principal reported the incident to law enforcement authorities. The complainant=s father picked him up from school and took him home. The complainant=s mother, upset about the injuries, filed a report with the police. Officer Fischetti questioned the complainant about the incident and concluded that delinquent conduct had occurred. On the following day, the complainant saw a dentist about the chipped teeth. One tooth required an emergency root canal. By the time of the adjudication hearing, the facial lacerations and other injuries the complainant had sustained had healed.

However, the complainant testified that he suffered psychological trauma in the form of fear and nightmares.

The district court found that, although the complainant never consented to being choked, he may have consented to playing a game called Apassout,@ the object of which is for one person to cause the other person to lapse into unconsciousness. According to the testimony of J.A.P. and the two friends who witnessed the incident, the complainant agreed to let J.A.P. cause him to pass out. J.A.P. testified that the complainant asked J.A.P. to make him pass out by holding him from the back, grabbing him around the chest, and squeezing him in a bearhug. J.A.P. also testified that because he did not know how to play Apassout@ in that manner, he decided instead to grab the complainant by the neck. In its oral ruling, the district court observed that if the complainant consented to anything, it Awas a big bear hug from behind. He did not give effective consent to choking pressure applied to the throat from the front. The Court finds that [J.A.P.] did not have a reasonable belief that [the complainant] consented to anything other than a big bear hug from behind.@

We review adjudications of delinquent conduct in juvenile proceedings under the same standards of review we use to review the sufficiency of the evidence supporting a jury=s verdict in a criminal case. *See In re L.M.*, 993 S.W.2d 276, 284 (Tex. App.CAustin 1999, pet. denied); *see also In re B.M.*, 1 S.W.3d 204, 206 (Tex. App.CTyler 1999, no pet.). To evaluate the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307 (1979); *In re J.L.H.*, 58 S.W.3d 242, 244-45 (Tex. App.CEl Paso 2001, no pet.); *L.M.*, 993

3

S.W.2d at 284; *see also* Tex. Fam. Code Ann. ' 54.03(f) (West Supp. 2002); *B.M.*, 1 S.W.3d at 206. A trial court=s findings of fact entered after a bench trial have the same force and dignity as a jury=s verdict. *B.M.*, 1 S.W.3d at 206; *In re T.D.*, 817 S.W.2d 771, 777 (Tex. App.CHouston [1st Dist.] 1991, writ denied).

J.A.P. first contends that the evidence is legally insufficient to show he knowingly, intentionally, or recklessly caused serious bodily injury to the complainant. A person commits assault if the actor intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Pen. Code Ann. ' 22.01(a) (West Supp. 2002). Assault is elevated to aggravated assault if the person commits assault as defined in Section 22.01 and in the course of the assault the person causes Aserious bodily injury@ to another. *Id.* ' 22.02(a)(1). To be guilty of an offense, a person must act with the requisite culpable mental state. *Id.* ' 6.02(a). A person acts intentionally who consciously desires to engage in the illegal conduct or cause the result. *Id.* ' 6.03(a); *Beltran v. State*, 593 S.W.2d 688, 689 (Tex. Crim. App. 1980); *Brooks v. State*, 967 S.W.2d 946, 948 (Tex. App.CAustin 1998, no pet.). A person acts knowingly when the actor is aware of the nature of the conduct or that the conduct is reasonably certain to cause the result. Tex. Pen. Code Ann. ' 6.03(b) (West 1994). A person acts recklessly when the actor is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* ' 6.03(c); *Navarro v. State*, 863 S.W.2d 191, 205 (Tex. App.CAustin 1993), *pet. ref=d*, 891 S.W.2d 648 (Tex. Crim. App. 1994).

4

The offense of aggravated assault is a result oriented offense. Thus, the appellant=s mental state must be directed to the result of the conduct. *See, e.g.*, *Mena v. State*, 749 S.W.2d 643, 645 (Tex. App.CSan Antonio 1988, pet. ref=d). The State must not only prove that J.A.P. intentionally, knowingly, or recklessly choked the complainant, but also that he intentionally, knowingly, or recklessly caused the complainant serious bodily injury. As the State acknowledged at oral argument, the record contains little support for finding that J.A.P. intentionally or knowingly caused the complainant serious bodily injury by choking him. Therefore, we will consider whether the evidence supports a finding that J.A.P. recklessly caused the complainant serious bodily injury. J.A.P. argues that the evidence proves at most that he acted with criminal negligence. We disagree. A person acts with criminal negligence Awith respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur.@ Tex. Pen. Code Ann. ' 6.03(d) (West 1994). Here, viewed in the light most favorable to the prosecution, J.A.P.=s own testimony shows not only that he should have been aware but that in fact he was aware of the substantial risk that would occur from choking the complainant:

Q. Choking somebody, is that dangerous?

A: Yes.

Q: How do you know it=s dangerous? Have you ever seen it done before?

A: No. ButCwell, choking period could be dangerous.[1]

---

[1] The two students who witnessed the event also testified that they were aware of the inherent dangers of choking another individual. One testified that choking somebody was Adumb@ because Achoking

5

J.A.P. testified that it was his idea to play "passout" by choking the complainant from the front and that he disregarded the consequences of this action:

Q. Now, did y=all think about—if—if he passed out, did y=all talk about what would happen?

A: No.

Q: Did you think about him hitting the ground?

A: No.

Q: Did you think he might hit the ground if he passed out?

A: Well, he did, you know.

Q: You didn=t try to catch him? Or you didn=t think—

A: No.

Q: You didn=t plan on catching him?

A: No.

Q: So you just weren=t really thinking that day, were you?

A: At the time, you don=t really—just going along with it. I don=t know.

Q: So you don=t think that was reckless? Have you learned anything from this?

A: Yeah.

_____

could lead to death.@ The other testified that choking was dangerous because "if you get choked@ there existed the risk that "you could suffocate and probably even die.@

Q:   What did you—what have you learned from what happened to [the complainant]?

A:   Shouldn=t be goofing off like that.

The evidence shows that J.A.P. understood but disregarded the dangers associated with playing the game of Apassout@ by choking and further disregarded the risk that choking the complainant would cause him to lose consciousness and collapse face-first into concrete, resulting in lacerations and chipped teeth.  We hold that the evidence is legally sufficient to prove that J.A.P. recklessly committed the charged offense.[2]  We therefore overrule J.A.P.=s first issue on appeal.

J.A.P. next contends that the evidence is legally insufficient to prove the complainant suffered serious bodily injury.  Serious bodily injury is defined as Ainjury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.@ Tex. Pen. Code Ann. ' 1.07(a)(46) (West 1994).  **In determining whether the evidence supports a finding of serious bodily injury, the relevant issue is the quality of the injury as it was inflicted, not after the effects are ameliorated by medical treatment.  *See Brown v. State*, 605 S.W.2d 572, 575 (Tex. Crim. App. 1980); *Boney v. State*, 572 S.W.2d 529,**

---

[2]  According to the district court, J.A.P.=s conduct warranted punishment in part because his testimony suggested an apparent lack of appreciation for the magnitude of the incident:

> [J.A.P.], what you told me was that this was not a big deal. And the message that I want you . . . to receive from this is that this is a big deal . . . [I]t=s a big deal because this game, as you call it, is based on cutting off the blood and air supply to the brain long enough so that that organ is impaired to the point of not functioning, such that the person blacks out.

531-32 (Tex. Crim. App. 1978).  Therefore, our analysis cannot turn on the fact that the complainant lost consciousness for only a few seconds, that his wounds healed, or that his tooth was saved by an emergency root canal.

Nor is expert medical testimony required to show that choking causes a substantial risk of death, as appellant argues.  In *Akbar v. State*, 660 S.W.2d 834 (Tex. App.C Eastland 1983, writ ref=d), an aggravated assault conviction was upheld where the victim was strangled nearly to the point of passing out.  There the court acknowledged the particular vulnerability of the throat, and then concluded: AFrom the evidence in the instant case since the victim was strangled to the point of >near blackout,= we hold that the jury could draw the inference that her injuries created a substantial risk of death.@ *Akbar*, 660 S.W.2d at 836.  Here, the complainant did in fact blackout.  The two eighth grade students who witnessed the event testified that they knew choking could lead to death; J.A.P.=s own testimony showed that he knew generally that choking someone is a dangerous activity.  We do not believe expert medical evidence was necessary to educate the district court on such an obvious danger.  Viewing the evidence in the light most favorable to the prosecution, we hold that any rational trier of fact could have found beyond a reasonable doubt that J.A.P.=s act of choking the complainant created a substantial risk of death.  *See Jackson v. Virginia*, 443 U.S. 307 (1979); *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991).  Because this finding alone is enough to satisfy the element of Aserious bodily injury,@ we overrule J.A.P.=s second issue.[3]

---

[3] The State also directs us to the victim=s emergency root canal as evidence of Aserious permanent

8

9

J.A.P. finally contends that the evidence produced at the hearing was factually insufficient to prove the complainant did not consent to the choking. Under the Penal Code, a victim=s effective consent or an actor=s reasonable belief that the victim consented to the conduct constitutes a defense to aggravated assault. Tex. Pen. Code Ann. ' 22.06 (West 1994). However, as appellant acknowledges, consent operates as a defense only if Athe conduct did not threaten or inflict serious bodily injury.@ *Id.* ' 22.06(1). Because we hold that a rational trier of fact could have found beyond a reasonable doubt that J.A.P.=s act of choking the complainant created a substantial risk of death, this conduct threatened serious bodily injury and therefore negates the defense of consent. We overrule J.A.P.=s third issue.

Having overruled J.A.P.=s issues on appeal, we affirm the judgment.

_____

**Marilyn Aboussie, Chief Justice**

**Before Chief Justice Aboussie, Justices Patterson and Puryear**

**Affirmed**

**Filed: October 17, 2002**

**Do Not Publish**