Daniel B. CHILDS, Appellant,

v.

Clay ARGENBRIGHT, Appellee.

No. 12–94–00031–CV.

Court of Appeals of Texas, Tyler.

May 31, 1996.

Daniel B. Childs, Jacksonville, for appellant.

Clay Argenbright, Jacksonville, pro se.

RAMEY, Chief Justice.

This is an appeal from monetary sanctions the trial court imposed upon an attorney, Daniel B. Childs ("Childs"), for pre-trial discovery abuse in a divorce action in which Childs represented the petitioner wife, Jeana Ann Argenbright ("Jeana"). The respondent husband, Clay Argenbright ("Clay"), had filed a counterclaim seeking managing conservatorship of their two minor children. The court imposed a fine of $1,107 against Childs individually, not his client, for alleged obstructive objections to the discovery and failure to make any substantive response to Clay's interrogatories and request for production of documents. We will affirm.

Jeana filed for divorce on August 19, 1990. The Divorce Decree awarding the managing conservatorship of the children to Jeana was signed on September 20, 1993. Childs represented Jeana throughout the proceedings; Clay's attorney, Roland Brown ("Brown"), was allowed to withdraw on June 19, 1992 and Clay was without counsel thereafter; no appearance was made on Clay's behalf in this appeal. Both Childs and Brown have maintained law offices in Jacksonville for a number of years.

On November 22, 1991, the trial court set the case for pre-trial hearing on February 3, 1992. On December 10, 1991, Brown served Childs with 23 interrogatories with subsections calling for thirty-three separate an-

swers along with six requests for production of documents. Twenty-nine days later, on January 9, Childs served Brown with nine pages of objections to the interrogatories and five pages of objections to the requests for production; Childs provided no answers to any of the discovery.

On January 13, 1992, Brown filed a Motion for Sanctions and to Compel Answers to Interrogatories and Request for Production ("Motion for Sanctions") but which did not include a certificate that efforts had been made to resolve the discovery dispute with out court intervention as required by Texas Rules of Civil Procedure 166(b)7. The motion asserted that sanctions were authorized by Rule 215(3). Childs did initiate a conference with Brown on January 15, but the discovery disputes were not resolved. Brown served a Certificate of Conference on January 16. Brown then amended the Motion for Sanctions on January 17, which included a certification that an attempt had been made to resolve the discovery dispute without intervention of the court in accordance with Rule 166(b)7. The hearing on the Childs' sanction motion was conducted on January 24 [1], at which Childs was directed to respond to most of the interrogatories and requests by January 31. The hearing itself, however, was recessed until to January 31, and presumably Childs' responses were likewise delayed; no statement of facts of a subsequent hearing has been filed here. The transcript indicates that Childs never filed any substantive answers to the discovery or made any other response after the January 24 hearing.

On February 4, Clay filed a motion to non-suit his counterclaim asserting his contention that he should be appointed managing conservator for the children; this non-suit was granted two days later. At a March 1992 hearing, the trial court requested written briefs on the sanctions issue. Brown complied, but Childs did not submit a brief. Thereafter, on June 19, 1992, the court permitted Brown to withdraw as Clay's counsel in this case.

---

1. The sanction hearing had been scheduled originally for January 16 but was delayed until January 24.

The court's Order Imposing Sanctions on Childs was signed on October 21, 1992; it imposed a $1,107 fine. Findings of Fact and Conclusions of Law were filed on November 19. They contained twenty-six Findings of Fact and the following five Conclusions of Law:

1. Daniel B. Childs abused the discovery process in resisting discovery.

2. Daniel B. Childs filed an excessive number of objections to CLAY ARGENBRIGHT's discovery requests, many of which objections were clearly insupportable.

3. The responses of Daniel B. Childs to CLAY ARGENBRIGHT's discovery requests were, in numerous instances, unreasonably frivolous.

4. The objections filed by Daniel B. Childs to CLAY ARGENBRIGHT's discovery requests were made for purposes of delay.

5. Imposition of a monetary sanction against Daniel B. Childs only and not his client, JEANA ANN ARGENBRIGHT, in the sum of $1,107.00 is appropriate in view of all factors, including the prejudice which the objectionable conduct caused to the Respondent, CLAY ARGENBRIGHT, and in order to deter such abuses in the future.

The final divorce hearing was conducted on November 19, 1992, and the Divorce Decree was signed on September 20, 1993.

Childs' first six points of error are briefed together and we will consider them in that manner. In these points, he maintains that the trial court erred and abused its discretion in imposing sanctions generally, and in its findings with reference to each of the conclusions of law, because there was no evidence, or in the alternative, insufficient evidence to support the conclusions of the court.

Our standard for the appellate review of the trial court's action in imposing discovery sanctions is whether the court abused its discretion. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex. 1985). Although "abuse of discretion" has been defined many times in many ways, it is generally held that a trial court abuses its discretion when it reaches a result that is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Ibid.* A court acts "arbitrarily and unreasonably" when it acts "without reference to any guiding rule and principle." *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In *Downer,* the supreme court stated:

The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather it is a question of whether the court acted without reference to any guiding rules and principles. Another way of stating the test is whether the act was arbitrary or unreasonable. The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred.

*Ibid,* 701 S.W.2d at 241–42.

Childs' contention that no evidence supports the court's sanction ruling or its conclusions of law requires us to

examine the record in the light most favorable to the finding to determine if there is any probative evidence, or reasonable inferences therefrom, which support the finding, and we must disregard all evidence or reasonable inferences therefrom to the contrary. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 276 (Tex.App.—Amarillo 1988, writ denied). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *In re King's Estate,* 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951).

*Matter of Marriage of DeVine,* 869 S.W.2d 415, 420 (Tex.App.—Amarillo 1993, writ denied). With respect to the challenge to the factual sufficiency of the evidence for these damages, we may set aside the verdict only if, after reviewing the entire record, the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Tennessee Gas Pipeline Co. v.*

*Lenape Resources Corp.,* 870 S.W.2d 286, 297 (Tex.App.—San Antonio 1993, no writ), *affirmed,* 925 S.W.2d 565 (Tex.1996).

At the sanctions hearing, three witnesses were called to testify, all by the movant: Brown, Childs and Jacksonville attorney John Ament ("Ament"). Although not testifying, the Attorney ad Litem, Ricky Richards, supported the movant's motion for sanctions.

First, Brown testified that the interrogatories and requests for production that he submitted to Childs in this case were those commonly asked in family law cases; some were clearly discoverable. On the 29th day, Childs served nothing but objections, nine pages of objections to the interrogatories and five pages to the six requests for production. Brown stated that this is the first time in his practice that no answers or any other information, even subject to objections, were received from a responding counsel. From his experience with Childs and from his knowledge of Childs' discovery responses, he testified that he was aware that Childs usually was disinclined to provide information in his discovery replies. Brown testified that at the time of the receipt of Childs' responses, because of the short time before the case was set for pre-trial hearing, it was essential that Brown have the requisite information to commence the deposition process immediately. Brown was opposed to any trial delay because Jeana had been granted possession of the two minor children. On cross-examination, Brown was able to provide the style of only one other case that he had had with Childs.

Ament testified that he has had an active trial practice in Jacksonville for 22 years. He had served as a member of the local bar grievance committee and was familiar with the bar's professional code of conduct.

Ament stated that Childs' response to the discovery in this case was the "most ridiculous I've ever seen" and that it "thwarts the meaning and the purpose and the spirit of discovery." He testified that Childs' failure to provide the names of persons with knowledge of relevant facts and the identity of experts and their reports, if he had any, was the type of "legal posturing" that must be stopped. He acknowledged that discovery is never perfect and some objections can always be levelled, but that the spirit of the rules requires parties to provide information where there are only technical matters that might be the subject of objection. On cross-examination, Ament acknowledged that he could recall only two cases by name in which Childs had filed objections.

When called by Brown, Childs testified about discovery objections involving him in three or four other forums. The attorney ad litem offered Childs' response containing similar discovery objections in another Cherokee county case. No documentation was presented to demonstrate the nature of the discovery or the objections in the various other cases discussed. Brown did elicit testimony from Childs that Childs had initiated contact with the adverse counsel in two other cases to ascertain when and where discovery was to be produced, but Childs did not explain why he did not undertake to follow the same course of conduct in the subject case. The balance of the hearing was devoted to the trial court's consideration of Childs' specific objections to the interrogatories and the motion to produce.

In his brief, Childs vigorously argues that his response to the discovery was proper, reasonable and in compliance with the law and the pertinent rules. He states that Brown admitted that some of his objections were proper and that Brown found at least five of Childs' interrogatories that were not objectionable. Childs asserts that the consequence of Brown's "definitions" resulted in making every request exceptionally overbroad. Further, Childs argues that he was under no legal compulsion to provide answers to the discovery until his objections were ruled upon. As stated, the trial court had been presented with other evidence that the fourteen pages of objections to the discovery without any substantive responses to the inquiries was a flagrant violation of the spirit of the discovery rules. As the trier of fact, the court resolved the conflicting testimony by ruling, contrary to Childs' contentions, that he had abused the discovery process.

In this disputed record, we hold that there is no abuse of the court's discretion.

Childs also maintains that any problem with delay that may have resulted from his conduct resulted from Brown's waiting two years after filing the case before commencing discovery. The only evidence in the record before us, however, demonstrates that the parties were attempting to effect a reconciliation until shortly before the discovery was initiated by Brown in late 1991.

■ Childs also contends that he was not required to respond to the discovery because Clay's interrogatories exceeded the maximum number of 30 answers specified by TEX.R. CIV. P. 168(5). Brown admitted that, including subsections, the interrogatories totalled 33. The question presented is whether seeking this number of answers should result in staying discovery precluding the imposition of sanctions or whether Childs was obligated nevertheless to make a timely meaningful reply. Childs asserts that he was relying upon the only two pertinent cases extant at the time he responded to the discovery. *Lone Star Life Insurance Company v. Street,* 703 S.W.2d 426, 428 (Tex.App.—Fort Worth 1986) (orig.proceeding), *overruled on other grounds,* 715 S.W.2d 638 (Tex. 1986), *vacated,* 718 S.W.2d 428 (Tex.App.—Fort Worth 1986); *Heissner v. Koons,* 679 S.W.2d 112, 115 (Tex.App.—Dallas 1984) (orig.proceeding).

There is no dispute that the subject interrogatories required 33 answers and exceeded the number permitted by Civil Rule 168(5). The issue presented is whether that nonconformity precludes the trial court's sanction. Here, Childs did not rely upon this admitted defect to seek a stay of discovery or insist that adverse counsel re-draft the interrogatories to comply with the limitations in the rule. In his objections to the interrogatories, Childs complained of the excessive number of answers required along with his other objections but no relief was sought that he not be required to respond until the queries were redrawn; instead he submitted his extensive objections to the interrogatories. Furthermore, Childs did not attempt to secure a protective order that would have forestalled answering the interrogatories. TEX.R. CIV.

P. 166(b)5. Likewise, Childs did not assign the excessive number of interrogatories as an appellate point of error here nor has he sought to have the sanctions stayed because the questions should be redrawn to comply with the rule.

Furthermore, the supreme court has held that "[t]he thirty-answer limit in Rule 168, like vagueness, burdensomeness and many other standards, while not susceptible of precise definition establishes some boundary to the range of discovery." *Braden v. Downey,* 811 S.W.2d 922, 928 (Tex.1991). The number of interrogatories in the subject case is almost precisely the same as in *Braden* where the supreme court directly held that the number did not trespass upon the boundary established by Rule 168(5) and concluded that there was no abuse of discretion. *Ibid.*

■ The record discloses that there was ample evidence of probative force to support the court's sanction order and conclusions of law. Furthermore, after reviewing the entire record as summarized above, we hold that the trial court did not abuse its discretion in ordering sanctions against Childs and that its conclusions of law were not so against the great weight and preponderance of the evidence as to be manifestly unjust. Childs' points of error one through six are overruled.

■ In his seventh point, Childs asserts that the trial court erred in imposing sanctions because Brown failed to comply with TEX.R. CIV. P. 166(b)7, which requires certification that an attempt has been made to resolve the discovery dispute with adverse counsel without the necessity of court intervention but that that effort failed. It is undisputed that the original motion did not include the certificate, but an amended motion containing the averment was filed prior to the hearing. The evidence at the hearing disclosed that there was a conference between counsel pertaining to the discovery disputes two days after Childs filed his objections although the meeting was initiated by Childs.

No authority is presented to us suggesting that the party seeking sanctions must have been the party that arranged the meeting.

Rule 166(b)7 does not impose this responsibility upon the movant. Although the movant must provide the certification, we conclude that this requirement is satisfied if the attempt at dispute resolution is made, regardless of which party convened the discussion. Childs' seventh point is overruled.

In his eighth point of error, Childs maintains that the trial court erred in imposing discovery sanctions against him despite the fact that Clay took a non-suit before the sanctions were ordered. Childs analogizes the subject case to the pre–1983 venue statute wherein defendants commonly asserted pleas of privilege to seek changes of venue. Under the pre-amendment law, a plaintiff's non-suit after the filing of a plea of privilege established venue should the suit be re-filed. The two cases Childs cited were earlier plea of privilege cases. *Tempelmeyer v. Blackburn,* 141 Tex. 600, 175 S.W.2d 222 (1943) and *Seguin Trailers, Inc. v. Sullair of Houston, Inc.,* 562 S.W.2d 540 (Tex.Civ.App.—El Paso 1978, no writ). In these venue cases, however, a plea of privilege was more than a pleading; it was *prima facie* proof of the right to defendant's change of venue. *Ibid.* A non-suit was an abandonment of the plaintiff's venue rights and was construed to be an admission that the plea of privilege was well taken. Thus, the non-suiting party's position in an earlier venue dispute is not analogous to that party's position when confronted with an ordinary motion, such as a sanction motion. No authority has been cited as to the effect upon a non-plea of privilege motion after a non-suit has been taken.

■ Here, Clay's non-suit pertained only to his counterclaim to be named managing conservator of the minor children. Issue was still drawn on all other allegations relative to the divorce, including fault, child support and visitation. No showing has been made that Clay's non-suit of his conservatorship claim only foreclosed the necessity of pre-trial discovery. Childs' eighth point of error is overruled.

Childs' ninth point of error asserts that the trial court erred in imposing sanctions because Clay's First Request for Production of documents improperly required Childs to provide the materials *"[o]n or before 30 days*

following service ..." whereas Rule 167(2), TEX.R. CIV. P., specifies that the response shall be served *"within 30 days after the service of the request."* (Emphasis added.) Additionally, Childs contends that *only a response* was due in accordance with Rule 167(2) but that actual production of documents was not required until a later date. Childs objected to the deviation from the rule as stated in the Request although he did serve a response on Brown on the twenty-ninth day after the service of the First Request for Production. Childs also objected to the failure of the Request to "specify a specific time and date for the production."

■ We disagree that the time for response language as expressed in the Request varies materially from the time for response specified in Rule 167(2). Although the prepositions used by Clay in his request differed from the "within" of Rule 167(2), both direct that the response must be served by the thirtieth day from the date of service of the original Request. We discern no substantive variation in the Request from the language contained in Rule 167(2).

■ We also disagree that the Rule countenances a subsequent date for document production, after the time for the response. Although decided after Childs' objections were served here, the Houston 14th Court of Appeals has held that the requested documents themselves should be produced within the thirty day time limit specified in the Rule. *Overall v. Southwestern Bell Yellow Pages, Inc.,* 869 S.W.2d 629, 631 (Tex.App.—Houston [14th Dist.] 1994, no writ). Clay's time parameters for producing the requested documents were not misstated. Since the Request did provide a time and place for production, we hold that the trial court did not abuse its discretion in entering its order of sanctions because of these claimed defects in the Request.

Furthermore, it is again noted that Childs did not attempt to secure a protective order from responding to or producing the requested documents because of alleged non-compliant language in the Request. TEX.R. CIV. P. 166(b)5. For all these reasons, Childs' ninth point of error is overruled.

The trial court's order of sanctions against Childs is affirmed.