# NO. 12-07-00041-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE MATTER OF R.R.,* | § | *APPEAL FROM THE SECOND* |
| | § | *JUDICIAL DISTRICT COURT OF* |
| *A JUVENILE* | § | *CHEROKEE COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

R.R. appeals from a juvenile court adjudication that he engaged in delinquent conduct. In three issues, R.R. contends that the State's petition was defective and challenges the sufficiency of the evidence to support the juvenile court's judgment. We affirm.

### BACKGROUND

At approximately 6:30 p.m. on August 27, 2005, R.R., a fourteen year old juvenile, and two other juveniles, P.B. and J.A., left R.R.'s father's residence in a GMC Suburban sport utility vehicle. It was "dusky dark" at the time and R.R., the driver, was not licensed to drive a motor vehicle. Storm clouds "knock[ed] out the sunlight" and "accentuated the darkness." R.R. was driving on a wet, muddy dirt road at a high rate of speed. The road did not have a shoulder, instead dropping off into a ditch. R.R. noticed a tree limb in the road and attempted to avoid it, losing control and causing the Suburban to strike a tree. As a result of the wreck, J.A. suffered injuries that lead to his death.

The State filed a petition in the juvenile court alleging that R.R. had engaged in delinquent conduct by committing the offense of criminally negligent homicide. Following a bench trial, the juvenile court found that R.R. had engaged in delinquent conduct by committing the offense. The juvenile court subsequently issued an order placing R.R. on probation until the age of eighteen. This appeal followed.

In his third issue, R.R. complains that the juvenile court erred in denying his motion to quash the State's petition, arguing that the petition failed to allege an offense under the Texas Penal Code. He further complains that the State's petition did not allege with sufficient particularity, as required by the Due Process Clause of the Fourteenth Amendment and by Texas Family Code section 53.04(d)(1), the "substantial and unjustifiable risk" necessary as a predicate for criminally negligent homicide. *See* U.S. CONST. amend. XIV; TEX. FAM. CODE. ANN. § 53.04(d)(1) (Vernon 2002); *see also* TEX. PENAL CODE ANN. § 6.03(d) (Vernon 2003) (defining criminal negligence); *In re Gault*, 387 U.S. 1, 33, 87 S. Ct. 1428, 1446-47, 18 L. Ed. 2d 527 (1967) (setting forth the minimum due process requirements necessary to afford accused juveniles adequate notice of the allegations against them). Finally, R.R. claims that his motion to quash should have been considered and granted under the rules governing civil special exceptions.

**Standards of Review**

We review a juvenile court's decision to grant or deny a motion to quash a petition, as well as a juvenile court's ruling on special exceptions, for an abuse of discretion. *See In re B.P.H.*, 83 S.W.3d 400, 405 (Tex. App.–Fort Worth 2002, no pet.) (abuse of discretion review applies to motions to quash petitions in juvenile cases); *City of Austin v. Houston Lighting & Power Co.*, 844 S.W.2d 773, 783 (Tex. App.–Dallas 1992, writ denied) (holding, in the context of a civil appeal, that rulings on special exceptions are reviewed for an abuse of discretion). The abuse of discretion standard is typically applied when a trial court has discretion either to grant or deny relief based on its factual determinations. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 20-21 (Tex. 1998)). A trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) (citing *Bocquet*, 972 S.W.2d at 21).

In conducting an abuse of discretion review, we examine the entire record. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex.1996) (citing *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex. 1987)). "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Childs v. Argenbright*, 927 S.W.2d 647,

650 (Tex. App.–Tyler 1996, no writ) (quoting ***Downer v. Aquamarine Operators, Inc.***, 701 S.W.2d 238, 242 (Tex. 1985)). However, "a trial court has no discretion in determining what the law is or applying the law to the facts." ***In re Kuntz***, 124 S.W.3d 179, 181 (Tex. 2003) (orig. proceeding); *see also **F.F.P. Operating Partners, L.P. v. Duenez***, 237 S.W.3d 680, 694 (Tex. 2007) ("[F]ailing to correctly apply the law is an abuse of discretion."). Nonetheless, even where a trial court gives an incorrect legal reason for its decision, the trial court's assignment of a wrong reason is not automatically reversible error. ***Hawthorne v. Guenther***, 917 S.W.2d 924, 931 (Tex. App.–Beaumont 1996, writ denied); ***Luxenberg v. Marshall***, 835 S.W.2d 136, 141-42 (Tex. App.–Dallas 1992, no writ). A trial court does not abuse its discretion if it reaches the right result, even where that result is based upon an incorrect legal reason. ***Id.*** Therefore, when a trial court gives an incorrect legal reason for its decision, we will nevertheless uphold that decision on any proper grounds supported by the record. ***Luxenberg***, 835 S.W.2d at 141-42.

**Failure to State Offense**

R.R. asserts that the juvenile court erred by denying his motion to quash the State's petition, arguing that the petition failed to allege an offense under the Texas Penal Code. As such, the question R.R. first raises is whether an offense is stated, not whether an offense is sufficiently stated. The petition ruled upon by the trial court reads, in pertinent part, as follows:

> [O]n or about the 27th day of August, 2005, [R.R.] violated a penal law of this State punishable by confinement in jail, to-wit: [Section] 19.05, [of] the Penal Code of Texas, in that he did then and there, in Cherokee County, Texas, by criminal negligence, cause the death of an individual, [J. A.], by: [R.R.], age 14, an unlicensed driver, operated a motor vehicle on a wet dirt road, swerved to miss a tree limb which was on the wet dirt road, lost control of said motor vehicle and struck a tree. (emphasis in original)

At its essence, the petition alleged that R.R. operated a motor vehicle, and that during that operation, "by criminal negligence," caused the death of J.A. Section 19.05 of the Texas Penal Code states that "[a] person commits an offense if he causes the death of an individual by criminal negligence." TEX. PENAL CODE ANN. § 19.05(a) (Vernon 2003). Therefore, the petition stated an

3

offense.[1]

**Due Process**

R.R. also asserts that the State's petition did not allege with sufficient particularity the "substantial and unjustifiable risk" necessary as a predicate for the existence of criminal negligence. *See* TEX. PENAL CODE ANN. § 6.03(d). The Fourteenth Amendment's Due Process Clause requires that pleadings in juvenile cases "set forth the alleged misconduct [of the juvenile] with particularity." *Gault*, 387 U.S. at 33, 87 S. Ct. at 1446. However, a petition need not allege an offense with the particularity of a criminal indictment so long as the charge is reasonable and definite. *M.A.V. v. Webb County Ct. at Law*, 842 S.W.2d 739, 745 (Tex. App.–San Antonio 1992, writ denied). Here, the State alleged that, on August 27, 2005, while driving a motor vehicle in Cherokee County, Texas, R.R. violated section 19.05 of the penal code when, by criminal negligence, he caused the death of J.A. According to section 6.03 of the penal code,

> [a] person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(d). In the context of the statutory definition of criminal negligence provided by the penal code, the State's petition set forth the alleged misconduct of R.R. with particularity, as required by the Fourteenth Amendment. *See C.F. v. State*, 897 S.W.2d 464, 470-71 (Tex. App.–El Paso 1995, no writ) (reaching a similar conclusion). *But see In re W.H.C.*, 580 S.W.2d 606, 608 (Tex. Civ. App.–Amarillo 1979, no writ) (implicitly holding the opposite).

**Family Code**

The Texas Family Code places additional requirements on such pleadings. *See W.H.C.*, 580 S.W.2d at 608. According to section 53.04 of the family code, a "petition must state[,] . . . with

---

[1] This action is in juvenile court; therefore, it is the Texas Family Code that is controlling, not the Texas Code of Criminal Procedure. *In re S.B.C.*, 805 S.W.2d 1, 3-4 (Tex. App.–Tyler 1991, writ denied). We also note that, except when in conflict with a provision of the Texas Family Code, the Texas Rules of Civil Procedure govern the proceedings. TEX. FAM. CODE ANN. § 51.17(a) (Vernon 2002); *S.B.C.*, 805 S.W.2d at 4 n.3.

4

reasonable particularity[,] the time, place, and manner of the acts alleged and the penal law or standard of conduct allegedly violated by the acts." TEX. FAM. CODE. ANN. § 53.04(d)(1). However, "[w]hen a term is defined by statute, it need not be further alleged in the charging instrument; the State need not plead evidence it intends to rely upon." *In re F.C.*, No. 03-02-00463-CV, 2003 WL 21282766, at *2 (Tex. App.–Austin June 5, 2003, no pet.) (mem. op.); *see C.F.*, 897 S.W.2d at 470-71. Therefore, by alleging that R.R. acted with criminal negligence, a term defined in detail by the penal code, in combination with the specifically pleaded allegations listed above and the citation to section 19.05 of the penal code, the State alleged, with reasonable particularity, the time, place, and manner of the acts alleged and the penal law or standard of conduct allegedly violated. *See id. But see W.H.C.*, 580 S.W.2d at 608 (implicitly holding the opposite).

**Special Exceptions**

R.R. claims that, because the Texas Rules of Civil Procedure generally apply to juvenile proceedings, *see* TEX. FAM. CODE. ANN. § 51.17(a), his motion to quash should have been considered and granted under the rules governing civil special exceptions. *See* TEX. R. CIV. P. 90, 91 (governing special exceptions); *see also A.N. v. State*, 683 S.W.2d 118, 120 (Tex. App.–San Antonio 1984, writ dism'd) (implicitly holding that special exceptions may be filed by defendants in juvenile cases). However, R.R.'s motion was titled "Motion to Quash" and requested only one remedy, the quashing of the State's petition. Further, at the hearing on R.R.'s motion, counsel for R.R. referred to the motion solely as a motion to quash. In this context, we cannot hold that the juvenile court had before it a matter of special exceptions, nor can we arbitrarily apply the rules governing special exceptions where those rules had not been invoked. Instead, we hold that R.R. failed to preserve error, if any, for appellate review. *See* TEX. R. APP. P. 33.1(a) (defining the steps necessary to preserve error). Further, such error, if any, would not constitute fundamental error, which would absolve R.R. from the need to properly present it to the trial court. *See Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 328 (Tex. 1993) (Fundamental error exists "in those rare instances in which the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas."). And, because of the sufficiency of the State's petition, the only rights adversely affected by our holding regarding preservation are rights that are generally forfeitable by inaction. *See Marin v. State*, 851 S.W.2d 275, 277-80 (Tex. Crim. App.

5

1993) (discussing forfeitable rights), *overruled on other grounds*, **Cain v. State**, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).

## Conclusion

The juvenile court properly denied R.R.'s motion to quash and, therefore, did not abuse its discretion. *See* **Honeycutt**, 24 S.W.3d at 360; **Bocquet**, 972 S.W.2d at 21. R.R. failed to preserve the issue of special exceptions for appellate review. *See* TEX. R. APP. P. 33 .1(a). We overrule R.R.'s third issue.

## EVIDENCE

In his first and second issues, R.R. contends that the evidence was not legally and factually sufficient to support the juvenile court's finding that he committed the offense of criminally negligent homicide. Specifically, R.R. argues that the evidence was not sufficient to support a finding that he acted with criminal negligence. As stated above, according to section 6.03 of the penal code,

> [a] person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(d).

## Standard of Review

In a juvenile court bench trial, findings of fact have the same force and dignity as a jury's verdict. **In re B.M.**, 1 S.W.3d 204, 206 (Tex. App.–Tyler 1999, no pet.) (citing **In re T.D.**, 817 S.W.2d 771, 777 (Tex. App.–Houston [1st Dist.] 1991, writ denied)). As such, an appellate court reviews those findings for legal and factual sufficiency by the same standards applied to reviewing evidence in support of a verdict by a jury in a juvenile case. **Id.** Even though appeals of juvenile cases are generally treated as civil matters, adjudications of delinquency are based on the criminal standard of proof, and we review the sufficiency of the evidence as we would in a criminal case. **In re T.T.**, No. 12-06-00034-CV, 2006 WL 3313350, at *1 (Tex. App.–Tyler Nov. 15, 2006, no pet.) (citing **In re C.M.G.**, 180 S.W.3d 836, 838 (Tex. App.–Texarkana 2005, pet. denied)).

6

When reviewing the adjudication evidence in a juvenile delinquency proceeding, an appellate court applies the legal sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); *B.M.*, 1 S.W.3d at 206 (citing *R.X.F. v. State*, 921 S.W.2d 888, 899 (Tex. App.–Waco 1996, no writ)). Evidence is legally sufficient when an appellate court, viewing the evidence in the light most favorable to the judgment, determines that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) (citing *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789). We must bear in mind that the finder of fact is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony. *See Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). The fact finder is entitled to draw reasonable inferences from the evidence. *See Dudley v. State*, 205 S.W.3d 82, 86-87 (Tex. App.–Tyler 2006, no pet.). Likewise, the reconciliation of conflicts in the evidence is within the exclusive province of the fact finder. *See Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).

In conducting a factual sufficiency review of the evidence, we must first assume that the evidence is legally sufficient under the *Jackson* standard. *See Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We then consider all of the evidence weighed by the fact finder that tends to prove the existence of the fact in dispute and compare it to the evidence that tends to disprove that fact. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). A judgment will be set aside only if the evidence supporting the judgment is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the judgment "clearly wrong and manifestly unjust." *See Ortiz v. State*, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002). A clearly wrong and manifestly unjust judgment occurs where the finding of delinquent conduct "shocks the conscience" or "clearly demonstrates bias." *See Zuniga v. State*, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004). The fact that we might harbor a subjective level of reasonable doubt is not enough to overturn a judgment that is founded on legally sufficient evidence. *See Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Although we are authorized to disagree with the fact finder's determination, even if probative evidence exists that supports the judgment, *see Clewis*, 922 S.W.2d at 133, our evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility of witness testimony. *See Santellan*, 939 S.W.2d at 164. Where there is

conflicting evidence, the fact finder's choice on such matters is generally regarded as conclusive. *See Dudley*, 205 S.W.3d at 89. We cannot declare that a conflict in the evidence renders the evidence factually insufficient simply because we disagree with the fact finder's resolution of the conflict. *See Watson*, 204 S.W.3d at 417.

**Discussion**

The State presented three witnesses at trial. The State first called R.R.'s father. The father testified that R.R. told him that, at the time of the wreck, he was driving the father's vehicle. He testified that R.R. did not have a driver's license at the time of the wreck. According to R.R.'s father, the vehicle was an "automatic transmission" GMC Suburban that R.R. had driven "several times" before the wreck.

Eventually, the father chose to end his testimony until he could consult with an attorney regarding his Fifth Amendment right against self incrimination.[2] At that point, in order to streamline the proceedings, the parties stipulated on the record that "at the time of the incident [R.R.] was fourteen years of age. He was just a few days short of his fifteenth birthday and he is now sixteen." They further stipulated that "at the time of the incident alleged in the petition [R.R.] had no valid Texas driver's license." Finally, the parties stipulated that "[J.A.] was killed in the accident."

The State next called P.B., a friend of R.R. and a passenger in the Suburban at the time of the wreck. P.B. stated that, at the time of trial, he was sixteen years of age. P.B. testified that, at the time of the wreck, R.R. was operating a motor vehicle – driving the Suburban. The group in the vehicle had been at a birthday party at R.R.'s father's home and was traveling to R.R.'s mother's home to retrieve a Sony PlayStation video game console because they had become "bored" at the party.

P.B. stated that the roadway was a dirt road and described how they came upon a tree limb in the roadway, R.R. "swerved to miss it," "lost control of the vehicle," and "hit a tree." According to P.B., R.R.'s speed while driving on the dirt road had been "about sixty-five" miles per hour. P.B. testified that R.R.'s speed concerned him because, on the dirt road, "it would make it a lot easier to [lose] control at that speed." This risk seemed "pretty plain and clear" to P.B., but he admitted that he did not have a driver's license at the time and also did not have one by the time of trial. P.B. stated that he did not voice his concerns to R.R. He also stated that he had ridden in a vehicle driven by R.R.

---

[2] We do not reach the question of whether the father was entitled to take this action.

on the day before the wreck.

On cross examination, P.B. stated that, at the time he entered the Suburban, he entered willingly and "had no concerns about [R.R.'s] ability to drive." He stated that, on the drive the previous day, R.R. "[d]id a good job [driving]" and that R.R. "[d]rove in a safe manner." P.B. admitted that, although he knew R.R. did not have a driver's license, he was not concerned about riding as R.R.'s passenger when he entered the Suburban.

P.B. discussed his basis for estimating R.R.'s speed that day, stating "whenever we were [losing] control I looked over to look at the speedometer." When pressed, P.B. admitted that, at the point of his observation, the Suburban was "slipping and sliding on the mud," and that "[t]he wheels would be turning faster than they would ordinarily." Therefore, P.B. admitted, that "[s]peed is going to go up" and he "really [couldn't] say for sure how fast [R.R.] was going." On redirect examination, P.B. testified that he did not consider R.R. to have been operating the Suburban in a safe manner.

The State next called Trooper James Fulton, a licensed peace officer and ten year veteran of the Texas Department of Public Safety's Highway Patrol Division. Trooper Fulton testified that he had been trained in motor vehicle accident investigation and reconstruction and that he had previously investigated many motor vehicle accidents. Trooper Fulton's testimony consisted of his investigation into the wreck in question and the conclusions he drew from that investigation. He stated that the roadway involved was a dirt road and that it was raining at the time of the wreck. He also described the dirt road as "wet" and "muddy."

In addition, Trooper Fulton gave several opinions regarding the wreck:

Q.      All right, sir. Did you take into account the surface of the roadway as well as the conditions of the surface of the roadway?

A.      Yes, I did.

Q.      And why is that important in this type of accident?

A.      Because dirt is unstable . . . - - plus having inclement weather[,] which would be rain. And you put, you know, the speed of the vehicle on this dirt road. You know, even if the speed limit on the road is sixty miles an hour on some parts of the road[,] and plus inclement weather, running sixty miles an hour is going to be dangerous, running over that is going to be more dangerous.[3]

---

[3] The actual posted speed limit for the road cannot be determined from the record.

9

. . . .

Q.        . . . If a witness has testified that that witness believed that the vehicle was traveling at about sixty-five miles an hour at the time that the accident occurred, if you had that information would you - - how would that affect your decision about this case?

A.        If this vehicle was running sixty-five miles an hour at the time of the, you know, on this road, [losing] control would probably be probable especially if you're trying to dodge something in [the] road, plus the impact on the tree[,] it would have a real vicious impact like this one right here was where it damages the whole vehicle. . . .

Q.        All right, sir.

A.        The speed was a major contributor to the impact on the tree.

. . . .

Q.        . . . All right, sir.  What charges did you file?

A.        Criminal negligent homicide.

Q.        And why did you select that charge?

A.        Because the driver is negligent for one by not having a driver's license, driving at, you know, [an] unsafe speed on a dirt road, and killing another person.

Q.        And [did] the road condition play any part of that, too?

A.        Yes.  You know, being a dirt road, being a muddy road, the inclement weather, all factors involved plays a big part in it.

Q.        Do you think that [R.R.] should have been aware of a substantial and unjustifiable risk because of the circumstances that existed at the time?

A.        Yes.

Q.        Do you believe that the risk was of such a nature and degree that the failure by [R.R.] to perceive it constituted a gross deviation from the standard of care of an ordinary person?

A.        Yes.

On cross examination, Trooper Fulton stated that his opinions were based on his examination of the scene of the wreck, including an examination of "skid marks."  He admitted that he did not know the "exact speed" of the Suburban when the wreck occurred and also did not have knowledge of R.R.'s driving skills.  He stated that the wreck occurred "around" 6:40 p.m. and that "[i]t was in the evening, it was dusky dark with a storm which had clouds which knocks out the sunlight."  This

10

situation "aggravated . . . and accentuated the darkness." Based on his investigation, he stated that both headlights on the Suburban were "probably working okay."

When asked to explain the "substantial and unjustifiable risk that [R.R.] should have been aware of," Trooper Fulton stated that it was "[t]he speed and the road conditions and the weather conditions." He stated that, "[a]ccording to the impact [evidence, R.R.] was running at a significant speed." However, Trooper Fulton "didn't do a speed calculation" as part of his investigation and did not note in his incident reports any opinion regarding "excessive speed" or "unsafe speed." On redirect examination, Trooper Fulton noted that the dirt road in question was "dangerous" because it had no shoulder and, instead, had a small ditch on each side.

On recross examination, Trooper Fulton was further questioned about the issue of speed:

> Q. Now, you also don't know how fast the vehicle was going, right?
>
> A. According to the damage on the vehicle[,] it had to be running at a substantial speed to cause that much damage.
>
> Q. But a substantial speed could be anything from thirty to ninety, right?
>
> A. He would have to be running over thirty to cause that much damage to a suburban[.]
>
> Q. But if he is running forty[?]
>
> A. I feel he would have to be running faster than that to cause this vehicle to attempt to roll over because of the damage. This wasn't a side impact. This was more of a top impact because he went - - the vehicle would have - - was attempting to roll over. That's how come the tree was smashed down across the top and went all the way across the top of the truck.
>
> . . . .
>
> Q. But here again[,] is it your testimony that SUVs don't roll over?
>
> A. No.
>
> Q. Is it your testimony that SUVs don't have a history of rolling over?
>
> A. They roll over.
>
> Q. They'll roll over at the slightest provocation, won't they?
>
> A. They roll over quite often.
>
> Q. Okay, so the fact that this was about to roll over isn't anything unusual, is it?
>
> A. No.

11

Following the testimony of Trooper Fulton, both sides rested. R.R. presented no witnesses.

The evidence, taken as a whole, shows that, during the critical period of his trip, R.R. was driving at a "substantial" and unsafe speed. This is so because of the conditions of the road as well as issues involving visibility. The uncontroverted evidence shows that it was raining and dark at the time of the drive. Likewise, the uncontroverted evidence shows that the road was a dirt road that had become wet and muddy due to the rain and that it had no shoulder. It was also uncontroverted that the trip in question was not the result of any emergency. Instead, the sole justification for the trip was to avoid boredom. Finally, it was stipulated that, at the time of the wreck, R.R. was only fourteen years of age and had no driver's license.

Viewing the evidence in the light most favorable to the judgment, we hold that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Johnson*, 871 S.W.2d at 186. As such, the evidence was legally sufficient to support the juvenile court's judgment. *See id.* The evidence contrary to the judgment, such as P.B.'s testimony as to R.R.'s driving skills and his admission as to the possible inaccuracy of his belief as to R.R.'s exact speed, as well as Trooper Fulton's testimony that he did not perform a speed calculation and the SUVs "roll over quite often," did not sufficiently weaken or contradict the evidence in a way that would render it insufficient. We hold that the evidence supporting the judgment is not so obviously weak, or overwhelmingly outweighed by contrary evidence, as to render the judgment "clearly wrong and manifestly unjust." *See Ortiz*, 93 S.W.3d at 87. Therefore, the evidence was factually sufficient to support the juvenile court's judgment. *See id.* We overrule R.R.'s first and second issues.

## DISPOSITION

We ***affirm*** the judgment of the trial court.


   BRIAN HOYLE   
Justice


Opinion delivered June 18, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)