**Opinion issued December 2, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

NOS. 01-25-00423-CV
01-25-00424-CV
01-25-00425-CV
01-25-00428-CV
01-25-00549-CV
01-25-00550-CV
01-25-00551-CV

_____

## IN THE MATTER OF A.P., Appellant

---

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Cases 2024-00258-J, 2024-00259J, 2024-00260J,**
**2024-00261J, 2024-00262J, 2024-00273J, and 2024-00672J**

---

## O P I N I O N

This is a juvenile-certification appeal. The State filed seven petitions to

adjudge the appellant a juvenile delinquent based on criminal conduct; six petitions

allege the appellant committed aggravated robbery and one petition alleges capital murder. The juvenile court waived jurisdiction and transferred the case to a district court for criminal proceedings. The appellant raises two points of error. His first point challenges the sufficiency of the evidence to support the juvenile court's waiver decision for all seven cases. His second point relates only to the juvenile court's finding there was probable cause the appellant committed the capital murder. We affirm.

**Background**

The State's evidence showed the appellant, then fifteen years old, participated in four separate robberies in southwest Houston in January 2024. The first robbery was in broad daylight on the afternoon of January 16. The appellant and two associates approached three individuals walking on the sidewalk near Bellaire Boulevard. The appellant pointed a gun at the victims. The robbers stole a cell phone from one victim and a cell phone, shoes, and cash from a second. One robber shot the second victim in the leg, and the appellant shot in the direction of an uninvolved witness. Two victims picked the appellant out of a photospread as one of the robbers.

The next robbery was around 10 pm that same day on South Gessner Road. The victim was getting out his car when another car drove up. Two Hispanic males got out of their car and approached the victim. They grabbed him by the neck and

discharged a firearm while demanding his car keys. The victim picked the appellant out of a photospread as one of the robbers.

The next robbery—which became a capital murder—was three days later, January 19. Around 3:40 in the afternoon two witnesses saw two Hispanic males rob 76-year-old Osvaldo Leyva on the sidewalk outside an apartment complex near South Braeswood Boulevard. One of the Hispanic males shot Leyva five times and the other stole something off the body. A witness picked the appellant out of a photospread and identified him as one of the robbers. Leyva died from his wounds.

The fourth robbery was later that night. Two females were moving a car from one parking spot to another at an apartment complex on Beechnut Street when two Hispanic males approached. The males demanded the car keys. One of them fired a warning shot into the air. When the victims were non-compliant, a robber shot one of them four times. The robbers left the scene without the car. The injured victim was taken to the hospital and survived. The other victim identified the appellant as the shooter.

In the juvenile court hearing, the State presented evidence of the appellant's history with the juvenile justice system. Between February 2021 and the delinquent conduct alleged here, the appellant was referred to the juvenile justice system about a dozen times, including twice for aggravated robbery and once for assaulting his pregnant sister by punching her in the stomach. He had spent most of that three-year

period either in juvenile detention or on juvenile community supervision. In mid-2022 the appellant's probation officer confronted the appellant about tampering with his ankle monitor. The appellant took the ankle monitor off and told the probation officer, "I don't give a f**k I'll go catch me a murder charge." The appellant was on juvenile community supervision at the time of the delinquent conduct alleged in these cases.

The State presented the testimony of psychologist Toni Walker, Ph.D., who described her assessment of the appellant as well as the psychiatric and psychological assessments the appellant had undergone during his various juvenile justice proceedings. Testing showed the appellant's reading and math skills were at roughly a fourth-grade level. The appellant's most recent IQ test showed a full-scale IQ of 52, which Walker said was in the bottom 0.1% of results. Walker was skeptical of this result, however, because prior IQ tests had shown results ranging from 76 to 89. This "unusual" drop caused Walker to give the appellant tests designed to measure malingering. On these tests the appellant scored "near or below chance level," which "raise[d] concerns about the level of effort" the appellant was putting into these tests. Walker testified that a psychiatrist had evaluated the appellant and concluded the appellant knew right from wrong and was competent to stand trial.

**Standard for Juvenile Court's Waiver of Jurisdiction**

Juvenile courts have exclusive original jurisdiction over cases involving delinquent conduct by those under seventeen years old. *See* TEX. FAM. CODE §§ 51.02(2) (defining "[c]hild"), 51.03(a) (defining "[d]elinquent conduct"), 51.04(a). A juvenile court may, after an evidentiary hearing, waive its exclusive original jurisdiction and transfer a child to an appropriate criminal district court for criminal proceedings if certain conditions are met. *See* TEX. FAM. CODE § 54.02; *Bell v. State*, 649 S.W.3d 867, 885–86 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd).

A juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court for criminal proceedings if, as relevant here:

(1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was:

(A) 14 years of age or older at the time he is alleged to have committed the offense, if the offense is . . . a felony of the first degree, and no adjudication hearing has been conducted concerning that offense; [and]

. . . .

(3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

TEX. FAM. CODE § 54.02(a).

The burden of proof for findings is the familiar preponderance-of-the-evidence standard. *Bell*, 649 S.W.3d at 886. The Family Code has a list of non-exclusive factors for juvenile courts to consider when making the transfer decision:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

TEX. FAM. CODE § 54.02(f).

A juvenile court waiving its jurisdiction must state its reasons or considerations for doing so. *Bell*, 649 S.W.3d at 887. That said, these reasons need not be "detailed, case-specific findings." *Id*. "A juvenile transfer order entered after the required transfer hearing [that] compl[ies] with the statutory requirements constitutes a valid waiver of jurisdiction even if the transfer order does not contain factually-supported, case-specific findings." *Ex parte Thomas*, 623 S.W.3d 370, 383 (Tex. Crim. App. 2021).

## Discussion

### I. The juvenile court did not abuse its discretion in determining the welfare of the community required criminal proceedings.

The appellant's first point of error relates to all seven charges. For this global complaint, the appellant alleges his low IQ and poor impulse control make the

6

evidence insufficient to support the juvenile court's finding that the welfare of the community requires criminal proceedings. In his brief he presents us with the question: "Can a juvenile Appellant with a full-scale IQ of 52 **ever** possess the 'sophistication and maturity' that would support a juvenile court's decision to waive its original jurisdiction?" (emphasis in original).

We use a two-step analysis for reviewing a claim the evidence is insufficient to support a juvenile court's transfer decision. *Bell*, 649 S.W.3d at 887. First we review the juvenile court's findings for legal and factual sufficiency. *Id.* These standards are well known. For legal sufficiency we view the evidence in the light most favorable to the juvenile court's transfer order, disregarding all contrary evidence unless a rational fact finder could not, and ask whether there is a scintilla of evidence supporting the juvenile court's findings. *Id.* If so, we advance to factual sufficiency review where we consider all the evidence and ask whether the juvenile court's findings conflict with the great weight and preponderance of the evidence so as to be clearly wrong and unjust. *Id.* If the evidence is legally and factually sufficient we review the juvenile court's transfer decision for an abuse of discretion. A juvenile court abuses its discretion if its decision is essentially arbitrary. *Id.* A juvenile court does not abuse its discretion if its decision represents a reasonably principled application of the legislative criteria. *Id.* It is the juvenile court's obligation to resolve conflicts in the evidence and we will not reverse based on a conflict in evidence. *Id.*

7

For each offense the juvenile court made findings for the section 54.02(a) factors. It found that 1) in each case the appellant was charged with a felony, 2) none of the offenses had been adjudicated, 3) for each offense the appellant was fourteen years of age or older, 4) there was probable cause the appellant committed each offense, 5) because of the seriousness of the offenses the welfare of the community required criminal proceedings, and 6) the appellant's background required transfer to criminal district court for the welfare of the community. The juvenile court stated it considered each of the section 54.02(f) factors but it did not make specific findings for these factors.

The appellant does not dispute the first three findings. He disputes the existence of probable cause for the capital murder charge in a separate point so we will address that separately. And he does not challenge the fifth finding about the seriousness of the offenses. The only finding his point brings into question is the sixth, regarding his background.

Indeed, regarding his background the appellant's challenges goes only to one of the section 54.02(f) considerations, his sophistication and maturity. But "[t]here is no requirement that the trial court specifically find the juvenile mature and sophisticated in order to support the waiver of jurisdiction." *Almanzar v. State,* No. 01-11-01058-CR, 2012 WL 6645003, at *4 (Tex. App.—Houston [1st Dist.] Dec. 20, 2012, pet. ref'd) (mem. op., not designated for publication) (quoting *In re M.A.,*

8

935 S.W.2d 891, 896 (Tex. App.—San Antonio 1996, no writ)). "Any combination of these factors may suffice to support a waiver of the juvenile court's exclusive original jurisdiction and not every factor need weigh in favor of transfer to the criminal district court." *Bell*, 649 S.W.3d at 886–87. Section 54.02(a)(3) is phrased in the disjunctive, allowing the juvenile court to base its determination of what the welfare of the community requires on either the seriousness of the offense or the background of the juvenile; it need not find that both necessitate criminal proceedings. *Id*. at 889–90.

The evidence of the other factors is both legally and factually sufficient to support the juvenile court's decision. All of the charged offenses are crimes against persons, not property. *See Ex parte Hawkins*, 6 S.W.3d 554, 559–60 (Tex. Crim. App. 1999) (collecting cases holding that under current Penal Code robbery is assaultive offense, not an aggravated form of theft, and so holding). The appellant faces six first-degree felonies and a capital felony. Three of the four robbery incidents that underlie these charges involve gunfire, not mere threats. In two of them the appellant allegedly fired the gun. In one of them the appellant is alleged to have fired at an uninvolved witness. There is more than a scintilla of evidence to support the trial court's finding that because of the seriousness of the offenses the welfare of the community requires criminal proceedings.

The appellant does not direct us to a great weight and preponderance of the evidence that weighs against this finding, nor do we discern any in the record. His only argument is that his 52 IQ means he is, necessarily, too immature and unsophisticated for the criminal justice system. The appellant offers no argument, however, for why the trial court could not have considered his higher scores on prior tests instead of his score of 52 on the most recent test, particularly in light of the psychologist's skepticism about the accuracy of that result. Nor does he offer argument as to why his score of 52 on one test overwhelms the evidence of education and functioning that is more consistent with the higher scores than with an IQ of 52. The appellant cites no authority suggesting that a single low IQ test result is determinative for the juvenile certification decision, and case law shows that certification decisions are multi-factor evaluations that focus more on whether the juvenile understood right from wrong rather than on test scores. *Bell*, 649 S.W.3d at 892-93 (collecting cases showing various factors courts consider when assessing sophistication and maturity). Because there is no great weight of evidence against the juvenile court's certification ruling, we find the evidence factually sufficient.

Finally, the juvenile court's ultimate ruling was not an abuse of discretion. The court conducted an adversarial hearing, heard evidence relevant to the statutory factors, made findings about the statutory factors, stated it considered all required factors, and ruled consistent with those findings and the evidence. The appellant's

10

only argument that this was an abuse of discretion regards his supposed 52 IQ, but this single test result is not determinative. We overrule the appellant's first point of error.

## II. There is probable cause to believe the appellant committed capital murder.

In his second point the appellant challenges the trial court's finding that there was probable cause to believe the appellant committed capital murder.[1]

### A. Standard of review

The appellant's second point asks us to evaluate the legal and factual sufficiency of the trial court's probable cause determination. The State responds by presenting a traditional argument for probable cause that does not revolve around particular standards of sufficiency review. This has brought to our attention that in past cases we have described our standard of review for a probable cause determination in several ways. We take this opportunity to clarify that probable cause is not a fact-finding but is a question of law, and we review it as such.

Before 1987, section 54.02(a) did not require a probable cause determination. *See* Act of May 21, 1987, 70th Leg., R.S., ch. 140 § 1, 1987 Tex. Sess. Law Serv. 140 (inserting probable cause requirement into Family Code section 54.02(a)). At that time, all the required determinations in section 54.02(a) were fact findings. *See*

---

[1] The capital murder case is trial court cause number 2024-00672J, and appellate cause number 01-25-00551-CV.

11

*A.T.S. v. State*, 694 S.W.2d 252, 254 (Tex. App.—Fort Worth 1985, writ dism'd) (listing pre-1987 findings required for juvenile transfer). Courts reviewed the 54.02(a) findings for legal and factual sufficiency, the same as the review for jury findings in a civil case. *See id*. at 253–54; *In re I. B.*, 619 S.W.2d 584, 586–87 (Tex. App.—Amarillo 1981, no writ).

But probable cause is a legal standard, not a finding of fact subject to sufficiency review. If the facts giving rise to probable cause are contradicted, then appellate courts treat it as a mixed question of law and fact, deferring to any findings of fact the factfinder made but reviewing de novo the application of those facts to the law. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). If there are no disputed facts, then probable cause is a question of law to be decided by the court and is subject to de novo review. *Id*.; *see Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 518 (Tex. 1997).

After the legislature added a probable cause determination to section 54.02(a), we continued to state that we would apply the same standard of review to the trial court's 54.02(a) "findings" as we would to a jury's answers to questions. *In re G.F.O.*, 874 S.W.2d 729, 732 (Tex. App.—Houston [1st Dist.] 1994, no writ). But probable cause was not at issue in *G.F.O. See id.* at 732–33. Two years later, when we were first called upon to address the standard for reviewing probable cause in the section 54.02 context, we used the then-prevailing legal standard used in criminal

cases, not the civil sufficiency standard. *See In re B.N.E.*, 927 S.W.2d 271, 274 (Tex.

App.—Houston [1st Dist.] 1996, no writ).[2] Our probable cause review in *B.N.E.* was

appropriate for a conclusion of law.

Since *B.N.E.*, we have issued a few opinions that, without explaining why,

apply legal and factual sufficiency standards to a probable cause determination. *See*

*e.g.*, *In re H.Y.*, 512 S.W.3d 467, 480 (Tex. App.—Houston [1st Dist.] 2016, pet.

denied); *In re C.R.*, 571 S.W.3d 849, 859 (Tex. App.—Houston [1st Dist.] 2018, no

pet.); *In re C.P.R.*, No. 01-22-00792-CV, 2023 WL 5761125, at *1, 8–10 (Tex.

App.—Houston [1st Dist.] Sept. 7, 2023, no pet.). Nothing in these cases suggests

that the parties actively litigated the standard of review, that the panels believed they

were deciding a standard of review, or that applying a different standard of review

to the probable cause determination would have affected the result of the case. In

light of *B.N.E.* and the long-standing rule that probable cause is a question of law in

both civil and criminal cases, we do not believe these cases require us to apply

sufficiency review to a probable cause determination. *See Webster v. Fall*, 266 U.S.

---

2    *In re B.N.E.* stated that a trial court's ruling regarding probable cause would be upheld so long as there was a "substantial basis" in the record. 927 S.W.2d 271, 274 (Tex. App.—Houston [1st Dist.] 1996, no writ). It relied on the Court of Criminal Appeals' decision in *State v. Carter* for the proposition that "[a]n appellate court does not conduct a *de novo* review of a trial court's probable cause determination." *Id.* (citing *Carter*, 915 S.W.2d 501, 504 (Tex. Crim. App. 1996)). However, that proposition was overruled by *Guzman v. State* which established the current standards for reviewing probable cause determinations. *See* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Landa v. Obert*, 45 Tex. 539, 543 (1876) ("What facts and circumstances amount to probable cause is a pure question of law."); *Hurst v. State*, 13 S.W.2d 95, 96 (1928) ("[T]he rule seems general in this state and elsewhere that if, in the evidence upon which 'probable cause' is based, facts are stated which, in the judgment of the court, constitute 'probable cause,' and the evidence is not controverted, a jury question touching the existence of 'probable cause' does not arise.").

Probable cause is the legal standard evidence must meet to justify the issuance of a search or arrest warrant or the initiation of criminal proceedings. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. Probable cause exists where there is reasonably trustworthy information sufficient to warrant a reasonable person to believe a particular person has committed an offense. *Guzman*, 955 S.W.2d at 87. "Probable cause deals with probabilities; it requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence." *Id.*

14

When, as here, the facts giving rise to probable cause are not in dispute, we review the issue de novo.[3] *See Dixon v. State*, 206 S.W.3d 613, 616 (Tex. Crim. App. 2006). Probable cause is determined not by individual facts but by the totality of the circumstances. *Guzman*, 955 S.W.2d at 90–91; *see Dixon*, 206 S.W.3d at 616.

**B. Analysis**

In his brief the appellant claims the State's evidence showed only "that Appellant was wearing a red sweatshirt on the day [Leyva] was shot." The State responds this is "[n]ot so," because the investigating officer "identified appellant as a party to the murder through multiple witnesses and surveillance footage that captured the murder."

The surveillance video admitted at the hearing shows Leyva walking down the sidewalk and being overtaken by two individuals walking at the same speed as each other. The lead individual wore a green hoodie and the second wore a red hoodie. The individual in the green hoodie confronted Leyva, then Leyva fell down. The individual in the red hoodie rapidly approached Leyva, bent down seemingly to pick something up, then walked across the street. The individual in the green hoodie

---

[3]  This is not to say there is no dispute about the appellant's guilt. Rather, there is no dispute about the facts of the police investigation—such as the video and what witnesses told police. The appellant contests the conclusions drawn from those facts, but not their existence. *See Garza v. State*, 126 S.W.3d 79, 86 (Tex. Crim. App. 2004) ("That appellant disagrees with the *conclusion* that probable cause was shown as a matter of law is not the same as appellant controverting the *facts*.") (internal quotation omitted) (emphasis in original).

followed him three seconds later. Police found several shell casings near Leyva's body. Police found other surveillance video near the area that showed the robbers' faces.

The evening of the murder, police were called to 8801 South Braeswood Boulevard, an apartment complex across the street from the crime scene. The reportee said that around 3 or 4 am she heard a gunshot, but only later that day did she realize a bullet had come through her wall. Police went to the adjoining apartment where the bullet had come from. The individual who said he lived there, Daniel, said there were no guns in the apartment. He allowed police inside to look. During this search, police found Leyva's ID cards as well as some shell casings.

Daniel told police he knew why they were there and he would tell them everything. Daniel showed officers two Instagram accounts he said belonged to the persons police were looking for. One account belonged to the appellant. Daniel told police the appellant had been at the apartment earlier that day and he had a gun. Daniel said the appellant had been wearing a red sweater. Another individual in the apartment, William, said that the appellant had been at the apartment earlier that day wearing a red hoodie or sweater. William said the appellant was with another individual, Kenneth Vasquez, and both the appellant and Vasquez had guns.

Police used information from this investigation to find the appellant's girlfriend. She said that on the day of Leyva's murder she and the appellant had an

16

argument at 8801 South Braeswood Boulevard. She said she ran away and the appellant chased her. Police reviewed the surveillance video of the area and saw the girlfriend running away about seven minutes before Leyva's murder. She identified a picture of an individual running in a red hoodie as being the appellant. A witness to Leyva's murder picked the appellant out of a photo lineup as one of the robbers.

The police investigation identified Vasquez as the individual in the green hoodie. Vasquez was identified as being involved in one of the January 16th robberies the appellant is charged with, as well as the other January 19th robbery the appellant is charged with.

From the totality of the circumstances, a reasonable person could believe there is a fair probability the appellant acted as a party to capital murder. Eyewitnesses put him at the scene at the time of the shooting. Witnesses said they saw one of the robbers go through Leyva's pockets, and while there are some inconsistencies in the eyewitness accounts of which robber went through Leyva's pockets, the video shows the appellant stopping at Leyva's body and bending over seconds after the shooting. The appellant and the shooter, Vasquez, left the scene in the same direction. Leyva's property was found at a location where the appellant and Vasquez went after the shooting. The appellant was involved with Vasquez in two other robberies in close temporal proximity to this robbery. The totality of the circumstances create a

reasonable inference the appellant and Vasquez acted as parties for this robbery and murder. *See* TEX. PENAL CODE § 7.02(a)(2), (b).

Having reviewed the evidence, we conclude there is probable cause to believe the appellant committed capital murder. We overrule his second point of error.

**Conclusion**

We affirm the juvenile court's judgments.


                                        Clint Morgan
                                        Justice

Panel consists of Chief Justice Adams and Justices Morgan and Dokupil.